# Exhibit 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| In re: Altisource Portfolio Solutions, S.A. Securities Litigation | Case 14-81156 CIV-WPD |

**LEAD PLAINTIFFS' SUR-REPLY IN OPPOSITION
TO THE OCWEN DEFENDANTS' MOTION TO DISMISS
<u>THE CORRECTED AMENDED CLASS ACTION COMPLAINT</u>**

Lead Plaintiffs respectfully submit this sur-reply in opposition to the Ocwen Defendants' motion to dismiss the Corrected Amended Class Action Complaint (the "Complaint").[1]

## ARGUMENT

The Ocwen Defendants' Reply inappropriately makes new factual assertions and arguments not made in their motion to dismiss, and relies upon extraneous materials that were not cited in the Complaint and are not subject to judicial notice. Ocw. Reply at 5, n.5 & 9 and Reply ODX I-J. These new purported facts and arguments all respond to central allegations in the Complaint that were previously ignored by the Ocwen Defendants and therefore not addressed by Lead Plaintiffs in their opposition to the motion to dismiss. Accordingly, they should not be considered by the Court in deciding the Ocwen Defendants' motion to dismiss. *See, e.g.*, *Herring v. Secretary, Dep't of Corrections*, 397 F.3d 1338, 1342 (11th Cir. 2005) ("As we repeatedly have admonished, arguments raised for the first time in a reply brief are not properly before a reviewing court.") (internal quotation marks omitted); *Foley v. Wells Fargo Bank, N.A.*, 849 F. Supp. 2d 1345, 1349 (S.D. Fla. 2012) (Dimitrouleas, J.) ("Because it is improper for Defendant to raise this new argument in its Reply brief, the argument will not be considered.").

By making these improper factual arguments, Defendants ask this Court to construe the Complaint's allegations in the light most favorable to Defendants and to make inferences in Defendants' favor, and not draw all reasonable inferences in Lead Plaintiffs' favor, as the law requires. *See Eastwood Enter., LLC v. Farha*, 2009 WL 3157668, at *2 (M.D. Fla. Sept. 28, 2009); *In re Faro Tech. Sec. Litig.*, 534 F. Supp. 2d 1248, 1255 (M.D. Fla. 2007) (*citing Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1198 n.2 (11th Cir. 2001)). However, even if the Court were to consider these new arguments and documents, they do not support the Ocwen Defendants' argument for dismissal.

---

[1] All capitalized terms are defined in the Complaint, unless otherwise defined herein. All citations to the Complaint [DE 50] are in the form "Compl. ¶_"; to the Ocwen Defendants' memorandum of law and declaration in support of their motion to dismiss [DE 64 & 66] are in the form "Ocw. Br. _" and "ODX _"; to Lead Plaintiffs' memorandum of law in opposition to the Ocwen Defendants' motion to dismiss [DE 73] are in the form "Ocw. Opp."; and to the Ocwen Defendants' reply memorandum and declaration in support of their reply [DE 82 & 83] are in the form "Ocw. Reply" or "Reply" and "Reply ODX."

I.  **The Ocwen Defendants admitted in the Consent Order to "knowing and willful" misconduct**

Ocwen "agree[d]" to the facts underlying the misconduct at issue here in the Consent Order imposed by the NY DFS. Specifically, Ocwen "agree[d]" with the NY DFS's determination that it operated with "inadequate and ineffective information technology systems and personnel" and had "widespread conflicts of interest" with Altisource. ODX F at 2 (agreeing to the "Facts" stated in ¶¶1-23 of the Consent Order) & ¶¶14-23. The Complaint is replete with allegations that Ocwen "*admitted* to the misconduct underlying the fraudulent conduct at issue here" through the Consent Order. Compl. ¶3 (emphasis in original); *see also* Compl. ¶¶14, 15, 18, 19, 75, 76, 79, 80, 82, 95, 97, 98, 104, 118, 122, 150, 151, 160, 162, 178, 180, 226, 241, 243, 246, 247, 249. However, in their motion to dismiss, the Ocwen Defendants did not address the Complaint's allegations about the Consent Order's clear admissions and, therefore, effectively conceded their admissions. *See* Ocw. Br. at 4, 5 (making only passing references to the Consent Order).

Now, for the first time in their Reply, the Ocwen Defendants challenge these admissions of misconduct and argue that they have no bearing on the adequacy of Lead Plaintiffs' allegations of scienter. Ocw. Reply at 9 ("The Consent Order contains no admission of 'fraud' or 'conspiracy' nor any finding that any of the Ocwen Defendants knew, as securities fraud claims require, that any Ocwen statements were false at the time they were made."). Defendants are essentially arguing that a plaintiff can never adequately allege a securities-fraud claim unless the defendants have specifically confessed to securities fraud. This argument fails as it is has no basis in the law, and is belied by the admissions in the Consent Order itself.

*First*, the plain language of the Consent Order demonstrates that Ocwen "agree[d]" to and therefore admitted the misconduct that forms the basis of the Complaint's scienter allegations against Ocwen and Erbey, regardless of whether their admissions contained the words "fraud" or "conspiracy." *See, e.g.*, ODX F at 2; Compl. ¶¶241-52; Ocw. Opp. at 9, 17-20. In particular, Ocwen "agree[d]" that "Mr. Erbey . . . has participated in the approval of a number of transactions between the two companies [Ocwen and Altisource] or from which Altisource received some benefit." ODX F, ¶21. Ocwen's admission to Erbey's involvement in transactions between Ocwen and Altisource—which directly contradicts the Ocwen Defendants' affirmative statements attesting to Erbey's recusal from all such transactions between the Companies—establishes Erbey's and Ocwen's scienter. ODX F, ¶21; Compl. ¶¶118, 226, 243-46; Ocw. Opp. at 17-18.

2

Similarly, Ocwen admitted that "Ocwen regularly gives borrowers incorrect or outdated information, sends borrowers backdated letters, unreliably tracks data for investors, and maintains inaccurate records." ODX F, ¶14. Ocwen also admitted that the letter-backdating problem (caused by Altisource's REALServicing (Compl. ¶123)) was "ignored" by Defendants for "five months," and that the letter backdating was ongoing and unresolved as late as December 2014, more than one year after it was undeniably brought to the attention of Ocwen's leadership. ODX F, ¶16. Thus, the Consent Order admissions make clear that REALServicing—as the sole provider of Ocwen's "core servicing functions"—was the cause of Ocwen's "failure to fulfill its legal obligations." Compl. ¶¶122-26. This admitted misconduct made it knowingly or recklessly false and misleading for Ocwen to state that its loan servicing through Altisource's REALServicing platform was "high quality" and "the most scalable servicing platform in the industry" that "enable[d] [Ocwen] to operate in a compliant manner." *See* Compl. ¶¶168-70, 172-73, 176-81.[2]

*Second*, Ocwen not only admitted the facts stated in the Consent Order, but also agreed to pay *$100 million* (in addition to $50 million in restitution) "as a civil monetary penalty pursuant to New York Banking Law § 44." ODX F at 1, 10. Significantly, New York Banking Law § 44 empowers the NY DFS to impose penalties of up to $250,000 for each day in which a financial institution (like Ocwen) "*knowingly and willfully committed any violation*" of New York law. N.Y.B.L. § 44(4) (emphasis added). Ocwen's admission of a "knowing[] and willful[]" violation of the law (*id.*) through "widespread conflicts of interest" and "ineffective and inadequate" loan servicing—which was a prerequisite to the Consent Order and its penalties—provides a compelling inference of scienter and demonstrates that the Consent Order does not relate only to regulatory matters (as Ocwen maintains). Ocw. Reply at 9.[3]

---

[2] Further, Ocwen's admissions concerning Hubzu and S.P. Ravi (ODX F, ¶¶22-23) each raise a compelling inference that their statements that Altisource did not overcharge Ocwen and its borrowers and that the Companies had "separate management" (Compl. ¶¶137, 143-44, 147-48, 157-58) were knowingly or recklessly false and misleading when made (*id.* ¶¶150-52, 159-60).

[3] Ocwen's mischaracterization of the admissions and penalties in the Consent Order as "concern[ing] regulatory violations, not fraud" is directly contradicted by recent public remarks made by the NY DFS Superintendent in a speech entitled "Financial Federalism: The Catalytic Role of State Regulators in a Post-Financial Crisis World." *See* Declaration of Hannah Ross in Support of Lead Plaintiffs' Sur-Reply ("Sur-Reply PX"), Ex. C. In this speech, Superintendent Lawsky, discussed the commission of "fraud, after fraud on Wall Street," and detailed the NY DFS's success in combatting this fraud by "expos[ing] and penaliz[ing] misconduct by individual senior executives." *Id.* at 4. Lawsky specifically highlighted the Ocwen Consent Order and forced

*Finally*, the Ocwen Defendants' untimely argument concerning the Consent Order admissions, at best, raises fact issues unsuitable for a motion to dismiss. *See In re Netbank, Inc. Sec. Litig.*, 2009 WL 2432359, at *5 (N.D. Ga. Jan. 29, 2009).

## II. Ocwen's untimely truth-on-the-market defense rests on improper materials and lacks merit

The Complaint alleges that the Ocwen Defendants' public statements concerning their avoidance of conflicts of interest with Altisource through "sound corporate governance" and "separate management" were revealed to be knowingly or recklessly false and misleading by, among other things, the NY DFS's disclosure that, in fact, the two companies shared the same Chief Risk Officer, S.P. Ravi, in addition to other executives. Compl. ¶¶77-91, 143-44, 152, 199-200, 226. In their motion to dismiss, the Ocwen Defendants never referred to the allegations concerning Ravi, nor did they dispute that their statement concerning "separate management" was untrue.[4] In their Reply, the Ocwen Defendants assert for the first time a truth-on-the-market defense, arguing that information concerning Ravi's dual role "had long been available to the public." Ocw. Reply at 9. In support, they mischaracterize two documents that were neither cited in the Complaint nor mentioned in Ocwen's motion to dismiss. Reply ODX I & J (purporting to show archived screenshots from the Ocwen and Altisource websites listing Ravi as an officer).

This newly raised argument based on documents outside the Complaint (and dated before the start of the Class Period) should be ignored not only as untimely because Lead Plaintiffs were not afforded an opportunity to respond in their opposition brief, but also as improper on a motion to dismiss. *See Page v. Postmaster Gen. & CEO of the U.S. Postal Serv.*, 493 Fed. App'x 994, 995 (11th Cir. 2012) ("In adjudicating a motion to dismiss, the district court may not resolve factual disputes."); *Speaker v. U.S. Dep't of Health & Human Servs. Centers for Disease Control & Prevention*, 623 F.3d 1371, 1379 (11th Cir. 2010) (court cannot consider unpled documents without converting Rule 12(b)(6) motion to Rule 56 motion); *Sanchez-Knutson v. Ford Motor Co.*,

---

termination of Erbey as an example of the NY DFS's success in combatting fraud and misconduct through its ability to "require[] . . . the Chairman of one of the United States' largest mortgage companies, Ocwen Financial, to step down as part of [an] enforcement action[] brought against [Ocwen]." *Id*.

[4] The Ocwen Defendants argued only that their false statements concerning "sound corporate governance" and "separate management" were statements of inactionable "corporate mismanagement." Ocw. Br. at 18-20; Corrected ODX C.

4

52 F. Supp. 3d 1223, 1229 (S.D. Fla. 2014) (Dimitrouleas, J.) (courts must resolve motions to dismiss "on the assumption that all the allegations in the complaint are true").

In any event, the documents submitted by the Ocwen Defendants actually *support* Plaintiffs' claims.[5] Defendants' submissions create the misleading impression that the Companies disclosed Ravi's dual position. However, when the documents are viewed in their entirety, it is clear that was not the case. In particular, Ravi's biography—which Defendants did not submit but is directly linked to the same archived page from the Altisource website that Defendants submitted—unambiguously states that Ravi "*previously* served as Vice President and Chief Risk Officer for Ocwen Financial Corporation." *Compare* Sur-Reply PX D (expanded excerpt from Altisource.com, archived on January 7, 2013) (emphasis added) *to* Reply ODX J (excerpt from Altisource.com, archived on January 7, 2013). A Class Period excerpt from Altisource.com contains the identical description of Ravi's past employment at Ocwen. *See* Sur-Reply PX E (excerpt from Altisource.com, archived on September 6, 2013). Thus, contrary to Defendants' contentions, these documents did *not* alert Altisource shareholders that Ravi worked for both Companies at the same time.[6]

The mere listing of Ravi on Ocwen's website did not convey information "sufficient to counter-balance effectively any misleading information created by [Ocwen and Altisource's] alleged misstatements," *Ganino v. Citizens Utils. Co.*, 228 F.3d 154, 167 (2d Cir. 2000), that the Companies maintained "separate management" (Compl. ¶143) and that Ravi "previously" worked at Ocwen (Compl. ¶138; Sur-Reply Exs. D-E). Indeed, Ravi's hidden dual role was part of the misconduct uncovered by the NY DFS and admitted by Ocwen in the Consent Order. Compl. ¶¶199, 226. At best, Defendants' new arguments raise issues of fact well outside the four corners of the Complaint that are not suitable for resolution on a motion to dismiss. *See Ganino*, 228 F.3d at 167 ("The truth-on-the-market defense is intensely fact-specific and is rarely an appropriate

---

[5] The two documents purport to be *pre-Class Period* archived excerpts from the Ocwen and Altisource websites that list Ravi as a member of each Companies' management. ODX I & J. Exhibit I purports on its face to be an archived excerpt from Ocwen.com dated February 5, 2013 (pre-Class Period), yet the Reply wrongly states that it was archived during the Class Period on November 6, 2013. Ocw. Reply at 9.

[6] The Altisource Defendants, also for the first time, reference the Ocwen Defendants' Reply arguments concerning these incomplete and unpersuasive archived web pages. *See* Altisource Defendants' Reply Memorandum in Further Support of Their Motion to Dismiss [DE 83], at 2. For the same reasons as discussed above, the Altisource Defendants' untimely arguments fail.

5

basis for dismissing a § 10(b) complaint for failure to plead materiality."); *In re Netbank*, 2009 WL 2432359, at *5; *Faro Tech.*, 534 F. Supp. 2d at 1255.

### III. The Ocwen Defendants made false statements about Altisource directly to Altisource investors

The Complaint alleges that Ocwen and Erbey's false statements about Altisource during the Class Period were "directed to and were material to Altisource investors and made 'in connection with' purchases and sales of Altisource stock." Ocw. Br. at 19 (citing Compl. ¶¶48-49, 61-65, 78, 143-44, 170, 268, 295-301); *see also* Ocw. Opp. at 12 (citing Compl. ¶¶137, 141-44, 147-48, 157-58, 168-70, 172-73, 176). In their motion to dismiss, the Ocwen Defendants did not challenge the Complaint's allegations concerning the connection between Ocwen's misstatements and Class members' purchases of Altisource stock. Instead, the Ocwen Defendants only (and incorrectly) argued that, as a matter of law, their statements could not have been made "in connection with" Class members' purchases of Altisource stock because Ocwen was not the issuer of the stock (Ocw. Br. at 9-10), an argument Lead Plaintiffs' dispensed with in their opposition. *See* Ocw. Opp. at 12.

In their Reply, the Ocwen Defendants continue to ignore the facts alleged in the Complaint and enumerated in the opposition brief establishing the connection between their numerous false statements and Class members' purchases of Altisource stock. *See* Ocw. Opp. at 19 (explaining how the "in connection with" element was satisfied. However, for the first time on Reply, the Ocwen Defendants address (and mischaracterize) their false statements at the joint December 2013 Investor Day Conference. Specifically, the Ocwen Defendants claim that the joint conference was the "lone instance that Plaintiffs offer to suggest that Ocwen communicated directly to Altisource investors." Ocw. Reply at 5, n.5. They further claim that, at the joint conference, "the delineation between Ocwen and Altisource speakers was clear" and that "Ocwen representatives addressed Ocwen's performance and internal policies, not Altisource's." *Id.* Defendants' untimely statements (that Lead Plaintiffs were unable to respond to in their opposition brief) are wrong on every level.

*First*, the Complaint alleges *numerous* false statements made by the Ocwen Defendants that were communicated to Altisource investors. Compl. ¶¶137, 141-44, 147-48, 157-58, 168-70, 172-73, 176; *see also In re WorldCom, Inc. Sec. Litig.*, 2004 WL 1435356, at *9 (S.D.N.Y. June 28, 2004) ("in connection with" requirement satisfied where non-issuer made public false statements about issuer of securities). For example, the Complaint alleges that Ocwen made false

6

statements in a presentation co-authored by Ocwen and Altisource and filed by both Companies with the SEC in connection with the December 2013 Investor Day Conference. Compl. ¶143.

*Second*, with respect to the alleged false statements made by Defendant Erbey during the December 2013 Investor Day Conference (Compl. ¶144), there was no delineation made at the conference between Erbey's role as Ocwen's Chairman and Altisource's Chairman. Indeed, as the transcript of the conference demonstrates, Erbey addressed shareholders of both Altisource and Ocwen (as well as shareholders of the other three related companies). Erbey explained "how . . . all these companies fit together," discussed the Companies' "common investment philosophy" and "core operating principles," and explained the advantages of investing in Altisource, Ocwen, and the other related companies.  Reply ODX H, at 2-6. The Ocwen Defendants ignore that Erbey made false statements to Altisource (and Ocwen) investors concerning the purported independence of Altisource and Ocwen and his recusal from related-party transactions during his presentation at the December 2013 Investor Day Conference. ODX H at 2, 4; Compl. ¶144.  Ocwen conveniently disregards that Defendant Erbey—the leader of both Companies and both an Ocwen Defendant and Altisource Defendant—repeatedly spoke to Altisource investors about Altisource. *See* Compl. ¶¶144, 147-48, 169-70, 174-76.

Thus, the Ocwen Defendants' arguments and exhibit only strengthen the overwhelming connection between the Ocwen Defendants' false and misleading statements and Class members' purchases of Altisource stock.

## CONCLUSION

For the reasons discussed above and in Lead Plaintiffs' memorandum of law in opposition to the Ocwen Defendants' motion to dismiss, the Ocwen Defendants' motion should be denied in its entirety.

Dated: June 17, 2015
Respectfully submitted,

/s/  Hannah Ross
Hannah Ross
Lauren A. Ormsbee
Jai Chandrasekhar
BERNSTEIN LITOWITZ BERGER
  & GROSSMANN LLP
1285 Avenue of the Americas
New York, New York 10019
Telephone: (212) 554 1400

7

                Facsimile: (212) 554 1444
                hannah@blbglaw.com
                lauren@blbglaw.com
                jai@blbglaw.com

*Counsel for Lead Plaintiffs the Pension Fund for the International Union of Painters and Allied Trades District Council 35 and the Annuity Funds for the International Union of Painters and Allied Trades District Council 35 and Lead Counsel for the Class*

Dated: June 17, 2015        /s/ Maya S. Saxena
                **SAXENA WHITE P.A.**
                Maya S. Saxena (FL Bar No. 0095494)
                Joseph E. White, III (FL Bar No. 621064)
                5200 Town Center Circle, Suite 601
                Boca Raton, FL 33486
                Telephone: (561) 394-3399
                Facsimile: (561) 394-3382
                msaxena@saxenawhite.com
                jwhite@saxenawhite.com

*Local Counsel for Lead Plaintiffs*