UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case 14-81156-CIV-WPD

In re: Altisource Portfolio Solutions, S.A.
Securities Litigation
_____/

## SECOND OMNIBUS ORDER ON MOTIONS TO DISMISS

THIS CAUSE is before the Court upon the Ocwen Defendants' Motion to Dismiss the Third Amended Consolidated Class Action Complaint [DE 97] and the Altisource Defendants' Motion to Dismiss Plaintiffs' Third Amended Class Action Complaint [DE 98] (collectively, the "Motions to Dismiss"). The Court has carefully considered the Motions to Dismiss [DE 97, 98], the parties' briefs, and is otherwise fully advised in the premises.[1]

I.   **Overview of the Case**

On September 4, 2015, the Court granted Defendants' Motions to Dismiss the Corrected Amended Class Action Complaint (the "CACC") [DE 50]. *See* [DE 89]. The operative complaint is now the Third Amended Class Action Complaint (the "TAC") [DE 95], which is the subject of the instant Motions to Dismiss.[2] Lead Plaintiffs ("Plaintiffs"), the Pension Fund for the International Union of Painters and Allied Trades District Council 35 and the Annuity Fund for the International Union of Painters and Allied Trades District Council 35, bring this action on behalf of themselves and all persons or entities who purchased or otherwise acquired the common stock of Altisource Portfolio Solutions, S.A. ("Altisource") during the period from April 25, 2013 through December 21, 2014, inclusive (the "Class Period"), and were damaged

---

[1] In their opposition briefs, Lead Plaintiffs requested that the Court hold a hearing. Finding that a hearing is unnecessary, the Court denies this request.

[2] Allegations in the TAC will be cited to as [¶ _].

thereby. [¶ 1]. Defendants are:  Altisource, a provider of support and technology services for mortgage servicing; Ocwen Financial Corporation ("Ocwen"), a mortgage servicer from which Altisource was spun-off; William C. Erbey, the founder, majority shareholder, and Chairman of Altisource and Ocwen until his forced resignation; William Shepro, the Chief Executive Officer of Altisource; and Michelle Esterman, the Chief Financial Officer of Altisource.[3] [¶¶ 25-33].

Plaintiffs assert four causes of action in the TAC:  (1) Count I: Violations of Section 10(b) of the Exchange Act and Rule 10b-5(b), against Defendant Altisource and the Individual Defendants; (2) Count II: Violations of Section 10(b) of the Exchange Act and Rule 10b-5(b), against Defendants Ocwen and Erbey; (3) Count III: Violations of Section 10(b) of the Exchange Act and Rule 10b-5(a) and (c), against Defendants Altisource, Esterman, and Shepro; (4) Count IV: Violations of Section 10(b) of the Exchange Act and Rule 10b-5(a) and (c), against Ocwen and Erbey; Count V: Violations of Section 20(a) of the Exchange Act, against Defendants Erbey, Shepro, and Esterman as Control Persons of Altisource; and Count VI: Violation of Section 20(a) of the Exchange Act, against Defendant Erbey as Control Person of Ocwen.

The Court assumes the reader's familiarity with the background of this action, and refers to the overview of the case in this Court's prior Order [DE 89] (the "Dismissal Order"). New allegations in the TAC include allegations regarding an October 2015 SEC release naming an Ocwen-related company, Home Loan Servicing Solutions, Ltd. ("HLSS"), as a respondent and citing transactions between Ocwen and HLSS. To the extent it is not contravened by this Order, the Court incorporates the Dismissal Order as applicable.

---

[3] Ocwen and Erbey will be referred to as the "Ocwen Defendants"; Erbey, Shepro, and Esterman are the "Individual Defendants." Together with Altisource, the Individual Defendants make up the "Altisource Defendants."

**II.     Standard of Review**

    **a.  Section 10(b) Claim**

Under Rule 10b-5, promulgated by the Securities and Exchange Commission ("SEC") under Section 10(b) of the Exchange Act, it is unlawful for any person:

> (a) To employ any device, scheme, or artifice to defraud, (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b-517 C.F.R. § 240.10b-5.

To state a claim for securities fraud based on misrepresentations under Section 10(b) of the Exchange Act and Rule 10b–5, a plaintiff must allege six elements: "(1) a material misrepresentation or omission; (2) made with scienter; (3) a connection with the purchase or sale of a security; (4) reliance on a misstatement or omission; (5) economic loss; and (6) a causal connection between the material misrepresentation or omission and the loss, commonly called loss causation." *Instituto De Prevision Militar v. Merrill Lynch*, 546 F.3d 1340, 1352 (11th Cir. 2008) (quotation omitted). To survive a motion to dismiss, a claim brought under section 10(b) of the Act or Rule 10b–5 must satisfy (1) the federal notice pleading requirements; (2) the special fraud pleading requirements found in Fed. R. Civ. P. 9(b), *see Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001); and (3) the additional pleading requirements imposed by the PSLRA, *see Phillips v. Scientific–Atlanta, Inc.*, 374 F.3d 1015, 1016 (11th Cir. 2004).

Under the federal notice pleading standards, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The court must construe the reasonable inferences from well-pleaded facts in the light most favorable to the plaintiff. *FindWhat Investor Grp. v. FindWhat.com*, 658 F.3d 1282, 1296 (11th Cir. 2011).

Additionally, Rule 9(b) requires that, for complaints alleging fraud or mistake, "a party must state with particularity the circumstances constituting fraud or mistake," although "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). Rule 9(b) dictates that the complaint must allege:

> (1) precisely what statements or omissions were made in which documents or oral representations; (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) them; (3) the content of such statements and the manner in which they misled the plaintiff; and (4) what the defendant obtained as a consequence of the fraud.

*FindWhat Investor Grp.*, 658 F.3d at 1296.

The PSLRA imposes additional heightened pleading requirements. For section 10(b) and Rule 10b–5 claims predicated on allegedly false or misleading statements or omissions, the PSLRA provides that "the complaint shall specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u–4(b)(1). Specifically, the complaint must "plead with particularity facts giving rise to a strong inference that the defendants either intended to defraud investors or were severely reckless when they made the alleged materially false or incomplete statements." *Mizzaro v. Home Depot, Inc*., 544 F.3d 1230, 1238 (11th Cir. 2008) (quotation marks omitted).

### b. Judicial Notice

"In determining whether to grant a Rule 12(b)(6) motion, the Court primarily considers the allegations in the complaint, although matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint, also may be taken into account." *Watson v. Bally Mfg. Corp*., 844 F. Supp. 1533, 1535 n.1 (S.D. Fla. 1993), *aff'd*, 84 F.3d 438

(11th Cir. 1996). When a plaintiff refers to documents in the complaint that are "central to the plaintiff's claims," the Court "may consider the documents part of the pleadings for purposes of Rule 12(b)(6) dismissal, and the defendant's attaching such documents to the motion to dismiss will not require the conversion of the motion into a motion for summary judgment." *Brooks v. Blue Cross & Blue Shield of Florida, Inc*., 116 F.3d 1364, 1369 (11th Cir. 1997). Additionally, the Eleventh Circuit has expressly held that a court may judicially notice relevant documents legally required by, and publicly filed with, the Securities and Exchange Commission ("SEC"). *See Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1276–81 (11th Cir. 1999). As the Eleventh Circuit stated, the "usual rules for considering 12(b)(6) motions are thus bent to permit consideration of an allegedly fraudulent statement in context." *Harris v. Ivax Corp*., 182 F.3d 799, 802 n.2 (11th Cir. 1999); *Hubbard v. BankAtlantic Bancorp, Inc*., 625 F. Supp. 2d 1267, 1279 (S.D. Fla. 2008). The Court has considered such documents when appropriate.

**III.     Discussion**

    **a.  Ocwen Defendants' Motion to Dismiss: Standing**

In the Dismissal Order, the Court held that Plaintiffs lacked standing to bring a 10b-5 claim against the Ocwen Defendants. The Ocwen Defendants contend that this remains true. Plaintiffs do not argue that the TAC has made new allegations such that standing is conferred. Rather, Plaintiffs respond that new caselaw supports their standing. Plaintiffs chiefly rely on *In re Galena Biopharma Inc. Sec. Litig*., No. 3:14-CV-367-SI, 2015 WL 4643474 (D. Or. Aug. 5, 2015). In that case, a company (Galena) hired an investor-relations firm (DreamTeam) to increase its stock price. *Id.*, at *3. DreamTeam accomplished this by posting misleading articles on investor websites recommending investing in Galena; the articles failed to include disclosures of the financial relationship between the companies and often falsely claimed that they were not

paid promotions. *Id.* While the case does not specifically address issues of standing, the court denied a motion to dismiss the 10b-5 claim against DreamTeam. *Id.*, at *49. The Ocwen Defendants argue that in the instant case, Plaintiffs allege that the two companies were linked by a business relationship. Conversely, in *Galena*, like the cases previously cited by Plaintiffs and distinguished by the Court, the third-party defendant was employed by the issuer to facilitate the sale of the securities that the plaintiffs had purchased.[4] The Court agrees.

   Plaintiffs' Sur-Reply is unavailing. In its brief, the Ocwen Defendants noted that while their reply brief was being filed, the Second Circuit issued an order affirming the dismissal for lack of standing in *LightSquared Inc. v. Deere & Co.*, No. 13 CIV. 5543 RMB, 2015 WL 585655 (S.D.N.Y. Feb. 5, 2015), a case that was discussed by the parties and considered by the Court in determining the standing issue in the Dismissal Order. In affirming the district court, the Second Circuit held that the plaintiff lacked standing for its claim against the third-party defendant that had allegedly failed to disclose facts that negatively affected the price of the purchased securities. *Harbinger Capital Partners LLC v. Deere & Co.*, No. 15-408-CV, 2015 WL 7971097, at *1 (2d Cir. Dec. 7, 2015). In the Sur-Reply, Plaintiffs argue that "in doing so, the Second Circuit in no way foreclosed actions by investors against non-issuer defendants." [DE 103-1 at 2]. The Court agrees that the law provides for 10b-5 liability for certain non-issuer defendants, such as "underwriters, brokers, bankers, and non-issuer sellers." *In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 102 (2d Cir. 2007). Regardless, as the Court has already held, the Ocwen Defendants do not fall within the limited group. Thus, the Court will dismiss Count II, against

---

[4] In *In re HealthSouth Corp. Sec. Litig.*, 257 F.R.D. 260, 267 (N.D. Ala. 2009), the third-party defendant (UBS) was the investment banker for the company whose securities the plaintiffs purchased (HealthSouth). The UBS defendants' allegedly wrongful conduct was "in connection with the issuance of bonds to raise billions of dollars of new capital for HealthSouth." *Id.* at 267; *see also In re Salomon Analyst Metromedia Litig.*, 544 F.3d 474, 482 (2d Cir. 2008) (There may be 10b-5 liability for "secondary actors such as research analysts").

Ocwen and Defendant Erbey in his capacity as Executive Chairman of Ocwen, Count IV, against Ocwen and Erbey, and Count VI against Erbey as control person of Ocwen.

### b. The Altisource Defendants' Motion to Dismiss

#### i. False Statements of Material Fact

"A statement is misleading if in light of the facts existing at the time of the statement a reasonable investor, in the exercise of due care, would have been misled by it." *FindWhat Investor Group v. FindWhat.com*, 658 F.3d 1282, 1305 (11th Cir. 2011) (quoting *SEC v. Texas Gulf Sulphur Co.*, 401 F.2d 833, 863 (2d Cir. 1968)) (alterations and ellipsis omitted). The "appropriate primary inquiry" is "into the meaning of the statement to the reasonable investor and its relationship to truth." *FindWhat Investor Group*, 658 F.3d at 1305 (quoting *Texas Gulf Sulphur Co.*, 401 F.2d at 862). A statement is misleading only if it "conveyed to the public a false impression." *FindWhat Investor Group*, 658 F.3d at 1305 (citation omitted).

Rule 10b–5 prohibits not only literally false statements, but also any omissions of material fact "necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading." 17 C.F.R. § 240.10b–5(b). By voluntarily revealing one fact about its operations, a duty arises for the corporation to disclose such other facts, if any, as are necessary to ensure that what was revealed is not "so incomplete as to mislead." *FindWhat Investor Group*, 658 F.3d at 1305 (internal quotation marks omitted). However, "[r]equiring that disclosures be 'complete and accurate' does not mean that by revealing one fact about a product, one must reveal all others that, too, would be interesting, market-wise." *Id.* (citation, alterations, and ellipsis omitted). A corporation has a duty to neutralize only the "natural and normal implication" of its statements. *Id.*

Under Section 10(b) and Rule 10b–5, "a plaintiff must show that the [defendant's] statements were misleading as to a material fact." *Basic Inc. v. Levinson*, 485 U.S. 224, 238 (1988) (emphasis omitted). "The test for materiality in the securities fraud context is whether a reasonable man would attach importance to the fact misrepresented or omitted in determining his course of action." *See SEC v. Merch. Capital*, LLC, 483 F.3d 747, 766 (11th Cir. 2007) (quotation marks omitted).

In the Dismissal Order, the Court found that Plaintiffs had failed to adequately allege a false statement of material fact, including the statements regarding Erbey's recusal from related party transactions. The Altisource Defendants allege that Plaintiffs have again failed to do so. With respect to related-party transactions as alleged in the CACC, the Court remarked in the Dismissal Order that the Altisource Defendants had only cited one instance where Erbey failed to recuse himself—the Southwest Business Corporation ("SWBC") transaction, which did not involve a transaction directly between Ocwen and Altisource. The TAC includes new allegations supporting the falsity of the recusal statements. The TAC references Item 404 of Regulation S-K, requiring that certain transactions be disclosed in SEC filings to investors, including those in which "any related person had or will have a material interest." [¶ 118]. Plaintiff argues that the SWBC transaction is such a pass-through arrangement. There are also a number of new allegations regarding an SEC Release issued as part of the administrative proceeding styled *In the matter of Home Loan Servicing Solutions, Ltd.*, File No. 3-16882 (the "SEC Release"). *See* [¶¶ 119-124]. The SEC Release details the improper involvement of Erbey in multiple transactions between Ocwen and HLSS, and notes that such potential for conflicts constitutes "a major concern for investors." *Id.* The Altisource Defendants argue that the SEC Release does not even mention Altisource, and therefore does not suggest that Altisource's public statements

8

regarding Erbey's recusal were false or misleading. While Altisource may not have been involved in the transactions described in the SEC Release, Erbey's improper conduct in approving transactions with HLSS in his Ocwen-capacity certainly provides a basis for inferring that he acted similarly with respect to Altisource. The Court finds that unlike the CACC, the TAC sufficiently pleads the material falsity of the statements regarding Erbey's recusal from related-party transactions.

### ii. Scienter

Section 10(b) and Rule 10b–5 require a showing of either an "intent to deceive, manipulate, or defraud," or "severe recklessness." *Mizzaro v. Home Depot, Inc*., 544 F.3d 1230, 1238 (11th Cir. 2008). "Severe recklessness" is a term reserved for those highly unreasonable omissions or misrepresentations that involve "extreme departure" from the standards of ordinary care and that present a danger of misleading buyers or sellers which is either known to the defendant or is "so obvious" that the defendant must have been aware of it. *Id*.

The PSLRA raised the standard for pleading scienter in a securities fraud action. Specifically, "the complaint shall, with respect to each act or omission alleged to violate this chapter, *state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind*." 15 U.S.C. § 78u–4(b)(2) (emphasis added). A "strong inference" of scienter means an inference that is "cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Tellabs, Inc. v. Makor Issues & Rights, Ltd*., 551 U.S. 308, 324 (2007). In making the scienter inquiry, "courts must consider the complaint in its entirety," counting any omissions and ambiguities in the complaint against an inference of scienter. *Id.* at 322, 326. "Although factual allegations may be aggregated to infer scienter, scienter must be alleged with respect to each defendant and with respect to each alleged

violation of the statute." *FindWhat Investor Grp. v. FindWhat.com*, 658 F.3d 1282, 1296 (11th Cir. 2011). The inquiry is "inherently comparative" because courts "must take into account plausible opposing inferences." *Id.* at 323.

In the Dismissal Order, the Court found that Plaintiffs failed to adequately plead scienter. In light of the new allegations regarding the SEC Release, the Court finds that the TAC, in contrast, sufficiently alleges scienter as to Defendant Erbey. As Erbey had substantial control over Altisource's activities, his scienter is imputed to Altisource. *See Miller v. Dyadic Int'l Inc.*, 2008 WL 5070279, at *8 (S.D. Fla. Nov. 20, 2008). With respect to Defendants Esterman and Shepro, the TAC's scienter allegations merely rehash the same facts alleged in the CACC. The Court finds that, for the reasons explained in the Dismissal Order, Plaintiff has again failed to allege scienter as to Defendants Esterman and Shepro.

### iii. Loss Causation

"[L]oss causation analysis in a fraud-on-the-market case focuses on the following question: even if the plaintiffs paid an inflated price for the stock as a result of the fraud (i.e., even if the plaintiffs relied), did the relevant truth eventually come out and thereby cause the plaintiffs to suffer losses?" *Meyer v. Greene*, 710 F.3d 1189, 1197 (11th Cir. 2013) (quoting *FindWhat*, 658 F.3d at 1312). In the Dismissal Order, the Court explained the link between the CACC's failure to adequately plead falsity of the Altisource Defendants' statements and its failure to plead loss causation. The TAC sufficiently pleads loss causation.

### iv. Scheme Allegations

The TAC adds a claim against Altisource, Esterman, and Shepro under 10b-5(a) and (c), in addition to the same 10b-5(b) claim. In their Motion to Dismiss, the Altisource Defendants argue that the TAC fails to state a claim for "scheme" liability under 10b-5(a) and (c). The

elements of a violation of Rule 10b–5(a) and (c) are:  (1) that the defendant committed a deceptive or manipulative act, (2) in furtherance of the alleged scheme to defraud, (3) with scienter, and (4) reliance. *In re Alstom SA*, 406 F. Supp. 2d 433, 474 (S.D.N.Y. 2005). Courts have held that while a plaintiff cannot "cast claims of misrepresentations as claims under Rule 10b–5(a) and (c) and thus evade the pleading requirements imposed in misrepresentation," it is possible that claims may proceed under 10b-5(b) as well as under 10b-5 (a) and (c) where the plaintiff alleges both misrepresentations as well as that defendants participated in a scheme involving conduct "beyond misrepresentations." *Id*.; *accord WPP Luxembourg Gamma Three Sarl v. Spot Runner, Inc.*, 655 F.3d 1039, 1058 (9th Cir. 2011) (affirming district court's dismissal of scheme claim where plaintiff failed to allege any facts separate from those already alleged in their Rule 10b-5(b) claims). As the Plaintiffs point out, however, the SEC has explicitly disagreed with courts that have adopted the "beyond-a-misstatement" approach and has clarified that conduct falling within the purview of one section may also fall within another. SEC Release No. 3981 at 20 (2014). Thus, the Court will not dismiss the claim on that basis.

The Altisource Defendants next argue that, for the same reasons articulated with respect to the 10b-5(b) claims, Plaintiffs have not adequately alleged scienter or loss causation. Referring to its discussion of each of these elements, *supra*, the Court finds that while Plaintiffs have adequately alleged loss causation and scienter as to Altisource, Plaintiffs have failed to allege scienter as to Defendants Shepro and Esterman. Thus, the Court will dismiss Count III as to Shepro and Esterman but will allow it to proceed against Altisource.

> v.   **Control Person Liability under 20(a)**

Under Section 20(a) of the Exchange Act, to state a claim for controlling person liability against a defendant, it must be alleged that the defendant had:  (1) the power to control the

general affairs of the entity primarily liable for the Section 10(b) or Rule 10b–5 violation at the time of the violation, and (2) the power to control or influence the specific policy that resulted in the primary violation under Section 10(b) or Rule 10b–5. *In re Unicapital Corp. Sec. Litig.*, 149 F.Supp.2d 1353, 1367 (S.D. Fla. 2001) (citing *Brown v. Enstar Group, Inc.*, 84 F.3d 393, 396 (11th Cir. 1996)). "[A] controlling person need not commit an intentional violation of the Act to be liable under section 20(a)." *Laperriere v. Vesta Ins. Grp., Inc.*, 526 F.3d 715, 724 (11th Cir. 2008). As Plaintiffs have now stated an actionable 10b-5 violation and have alleged the Individual Defendants' power to control Altisource, the claim will proceed against them.

### IV.  Conclusion

For the foregoing reasons, it is **ORDERED AND ADJUDGED** as follows:

1. Lead Plaintiffs' Motion for Leave to File a Sur-Reply in Opposition to the Ocwen Defendants' Motion to Dismiss [DE 103] is hereby **GRANTED**;

2. The Ocwen Defendants' Motion to Dismiss the Third Amended Consolidated Class Action Complaint [DE 97] is hereby **GRANTED**;

3. The Altisource Defendants' Motion to Dismiss Plaintiffs' Third Amended Class Action Complaint [DE 98] is hereby **GRANTED in part and DENIED in part**;

4. Count I is **DISMISSED** as to Shepro and Esterman; Count II is **DISMISSED** in its entirety; Count III is **DISMISSED** as to Shepro and Esterman; Count IV is **DISMISSED** in its entirety; and Count VI is **DISMISSED** in its entirety.[5]

---

[5] Under Rule 15, leave to amend should be freely given "when justice so requires." Fed. R. Civ. P. 15(a)(2). Having amended their complaint four times, Plaintiffs have had ample opportunity to replead in an attempt to remedy any curable deficiencies. Thus, the dismissals are with prejudice.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, this 22nd day of December 2015.

WILLIAM P. DIMITROULEAS
United States District Judge

Copies furnished to:

Counsel of record