**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

In re: Altisource Portfolio Solutions, S.A.
Securities Litigation

Case 14-81156 CIV-WPD

**LEAD PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION
SETTLEMENT AND PLAN OF ALLOCATION, AND INCORPORATED
<u>MEMORANDUM OF LAW</u>**

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ................................................................................................. ii

MOTION ............................................................................................................................... 1

MEMORANDUM OF LAW ................................................................................................. 1

I.     PRELIMINARY STATEMENT ................................................................................. 1

II.    THE SETTLEMENT MERITS APPROVAL BY THE COURT ................................ 3

       A.    The Settlement Satisfies the Threshold Consideration of Being the Product
             of Good-Faith, Arm's-Length Negotiations ......................................................... 5

       B.    The *Bennett* Factors Support Approval of the Settlement ..................................... 6

             1.    The Significant Obstacles to Success at Trial Support Approval of
                   the Settlement................................................................................................ 6

             2.    Considering the Range of Possible Recoveries, the Settlement
                   Amount is Clearly Within the Range of Reasonableness ......................... 10

             3.    The Complexity, Expense, and Likely Duration of Continued
                   Litigation Support Approval of the Settlement......................................... 11

             4.    Class Members' Reaction to Date Supports Approval of the
                   Settlement .................................................................................................. 12

             5.    The Settlement Was Reached After Substantial Discovery and
                   Motion Practice and, Thus, the Stage of the Proceedings Strongly
                   Supports Approval of the Settlement......................................................... 13

       C.    The Recommendations of Experienced Counsel and  Plaintiffs Heavily
             Favor Approval of the Settlement....................................................................... 13

III.   THE COURT SHOULD APPROVE THE PLAN OF ALLOCATION........................... 14

IV.    NOTICE TO THE SETTLEMENT CLASS SATISFIED RULE 23 AND DUE
       PROCESS ................................................................................................................... 15

V.     CLASS CERTIFICATION......................................................................................... 16

VI.    CONCLUSION .......................................................................................................... 17

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Access Now, Inc. v. Claire's Stores, Inc.*,
   No. 00-14017-CIV, 2002 WL 1162422 (S.D. Fla. May 7, 2002)...........................................12

*Bennett v. Behring Corp.*,
   737 F.2d 982 (11th Cir. 1984) ...................................................................... *passim*

*Canupp v. Sheldon*,
   No. 2:04-cv-260, 2009 WL 4042928 (M.D. Fla. Nov. 23, 2009)...................................5, 6, 11

*Cotton v. Hinton*,
   559 F.2d 1326 (5th Cir. 1977) ..................................................................4, 5, 13

*Dura Pharm., Inc. v. Broudo*,
   544 U.S. 336 (2005)................................................................................9, 15

*Eisen v. Carlisle & Jacquelin*,
   417 U.S. 156 (1974)....................................................................................15

*Faught v. Am. Home Shield Corp.*,
   668 F.3d 1233 (11th Cir. 2012) ......................................................................4

*Garst v. Franklin Life Ins. Co.*,
   No. 97-C-0074-S, 1999 U.S. Dist. LEXIS 22666 (N.D. Ala. June 25, 1999) ........................10

*Holman v. Student Loan Xpress, Inc.*,
   No. 8:08-cv-305-T-23MAP, 2009 WL 4015573 (M.D. Fla. Nov. 19, 2009) ..........................5

*In re Advanced Battery Techs., Inc. Sec. Litig.*,
   298 F.R.D. 171 (S.D.N.Y. 2014) ......................................................................16

*In re BankAtlantic Bancorp, Inc. Sec. Litig.*,
   No. 07-61542-CIV, 2011 WL 1585605 (S.D. Fla. Apr. 25, 2011).........................................11

*In re Checking Account Overdraft Litig.*,
   830 F. Supp. 2d 1330 (S.D. Fla. 2011) .............................................................. *passim*

*In re Chicken Antitrust Litig. Am. Poultry*,
   669 F.2d 228 (5th Cir. Unit B 1982)................................................................4, 14

*In re China Sunergy Sec. Litig.*,
   No. 07 Civ. 7895 (DAB), 2011 WL 1899715 (S.D.N.Y. May 13, 2011)................................10

*In re CP Ships Ltd. Sec. Litig.*,
  578 F.3d 1306 (11th Cir. 2009) ....................................................................4

*In re Giant Interactive Grp., Inc. Sec. Litig.*,
  279 F.R.D. 151 (S.D.N.Y. 2011) ................................................................14

*In re Global Crossing Sec. & ERISA Litig.*,
  225 F.R.D. 436 (S.D.N.Y. 2004) ................................................................14

*In re HealthSouth Corp. Sec. Litig.*,
  572 F.3d 854 (11th Cir. 2009) .................................................................3, 5

*In re Hi-Crush Partners L.P. Sec. Litig.*,
  No. 12-cv-8557, 2014 WL 7323417 (S.D.N.Y. Dec. 19, 2014) ............14

*In re Sunbeam Sec. Litig.*,
  176 F. Supp. 2d 1323 (S.D. Fla. 2001) ......................................4, 10, 13

*In re U.S. Oil & Gas Litig.*,
  967 F.2d 489 (11th Cir. 1992) .....................................................................4

*Leverso v. SouthTrust Bank of Al., N.A.*,
  18 F.3d 1527 (11th Cir. 1994) ....................................................................4

*LiPuma v. Am. Express Co.*,
  406 F. Supp. 2d 1298 (S.D. Fla. 2005) ......................................4, 12, 13

*Meyer v. Greene*,
  710 F.3d 1189 (11th Cir. 2013) ..................................................................9

*Perez v. Asurion Corp.*,
  501 F. Supp. 2d 1360 (S.D. Fla. 2007) ................................................5, 13

*Ressler v. Jacobson*,
  822 F. Supp. 1551 (M.D. Fla. 1992) .........................................................12

*Strube v. Am. Equity Inv. Life Ins. Co.*,
  226 F.R.D. 688 (M.D. Fla. 2005) ........................................................4, 6, 13

*Wal-Mart Stores, Inc. v. Visa U.S.A.*,
  396 F.3d 96 (2d Cir. 2005) ........................................................................15

*Yang v. Focus Media Holding Ltd.*,
  No. 11 Civ. 9051, 2014 WL 4401280 (S.D.N.Y. Sept. 4, 2014) ............14

**Statutes and Rules**

PSLRA, 15 U.S.C. § 78u-4(a)(7) ....................................................................16

Fed. R. Civ. P.

Rule 23(a) ...................................................................................................................16

Rule 23(b)(3) .............................................................................................................16

Rule 23(c)(2)(B)....................................................................................................15, 16

Rule 23(e)...........................................................................................................1, 4, 5, 15

## Other Authorities

W. Rubenstein, A. Conte, & H. Newberg, 4 *Newberg on Class Actions*
(4th ed. 2010) ..............................................................................................................5

## MOTION

In accordance with Rule 23(e) of the Federal Rules of Civil Procedure, the Court-appointed Lead Plaintiffs the Pension Fund for the Painters and Allied Trades District Council 35 and the Annuity Fund for the Painters and Allied Trades District Council 35 ("Lead Plaintiffs" or the "Painters Funds"), on behalf of themselves and the Settlement Class, respectfully submit this Motion for final approval of the proposed Settlement of the above-captioned securities class action (the "Action") and for approval of the proposed plan of allocation of the Settlement proceeds (the "Plan of Allocation").

This Motion is supported by the following Memorandum of Law and by the accompanying Declaration of Hannah G. Ross in Support of: (I) Lead Plaintiffs' Motion for Final Approval of Class Action Settlement and Plan of Allocation, and (II) Lead Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses (the "Ross Declaration" or "Ross Decl.").[1]

## MEMORANDUM OF LAW

Lead Plaintiffs respectfully submit this Memorandum of Law in support of their Motion under Rule 23(e) of the Federal Rules of Civil Procedure for final approval of the proposed Settlement and approval of the proposed Plan of Allocation.

## I.   PRELIMINARY STATEMENT

Subject to Court approval, Lead Plaintiffs have agreed to settle all claims in this Action in exchange for a cash payment of $32 million, which has been deposited into an escrow account. As explained more fully below, the Settlement is fair, reasonable, and adequate and should be approved.[2]

---

[1]   Unless otherwise defined in this Memorandum, all capitalized terms have the meanings defined in the Stipulation and Agreement of Settlement, dated February 8, 2017 (the "Settlement Stipulation") (ECF No. 250) or in the Ross Declaration.

[2]   The Ross Declaration is an integral part of this submission and, for the sake of brevity in this memorandum, Lead Plaintiffs respectfully refer the Court to the Ross Declaration for a detailed description of, among other things: the history of the Action (¶¶ 12-101), the nature of the claims asserted (¶¶ 23-29, 35-43, 96-98), the negotiations leading to the Settlement (¶¶ 102-106), the risks and uncertainties of continued litigation (¶¶ 109-130), and the terms of the Plan of Allocation for the Settlement proceeds (¶¶ 137-144).

The Settlement is the product of good-faith, arm's-length negotiations, including an intensive mediation process overseen by former U.S. District Judge Layn Phillips, which involved the exchange of written submissions concerning liability, damages, loss causation, and Defendants' available insurance coverage and ability to pay a settlement or judgment, and culminated in a mediator's recommendation by Judge Phillips that the case be settled for $32 million, which was accepted by the parties. The Settlement also has the full support of Lead Plaintiffs, which are sophisticated pension and annuity plans that have experience acting as lead plaintiffs in other securities class actions. In addition, Lead Counsel for the Settlement Class, the law firm of Bernstein Litowitz Berger & Grossmann LLP, which is highly experienced in prosecuting securities class actions, has concluded that the Settlement is favorable given the risk, delay, and expense of continued litigation. Further, while the deadline to object has not yet passed, the reaction of the Settlement Class to date has been favorable, as not a single Class Member has submitted an objection to the Settlement.

When the agreement to settle was reached, Lead Plaintiffs and Lead Counsel thoroughly understood the strengths and weaknesses of the Action. As more fully described in the Ross Declaration, before the Settlement was agreed to, Lead Counsel had, among other things, (i) extensively investigated Defendants' alleged misconduct by interviewing former Altisource and Ocwen employees and thoroughly reviewing and analyzing a large volume of publicly available information before drafting and filing the amended complaints in this litigation; (ii) briefed Defendants' motions to dismiss and motion for reconsideration; (iii) in connection with discovery, briefed several motions to compel and motions for protective orders; (iv) consulted with damages and industry experts; (v) prepared and filed a comprehensive brief in support of Lead Plaintiffs' motion for class certification, together with two supporting expert declarations and numerous exhibits in support of the motion; (vi) prepared and served expert reports on damages and on Defendants' representations about Erbey's conflicts of interest; (vii) reviewed and analyzed over one million pages of documents produced by Defendants and third parties; and (viii) submitted detailed mediation submissions to Judge Phillips addressing, among other things, issues of liability, damages and loss causation. In short, this case was vigorously litigated on an extremely tight schedule through multiple motions to dismiss and well into formal fact and expert discovery before the first settlement discussions were held, and both sides had a solid

understanding of their positions' strengths and weaknesses, both factual and legal, when they entered into settlement negotiations under the auspices of Judge Phillips.

The Settlement is a favorable result in light of the substantial risks of continued litigation. While Lead Plaintiffs believe that the claims asserted against Defendants are meritorious, they recognize that the Action presented a number of substantial risks to establishing liability and damages. As detailed in the Ross Declaration and discussed further below, while the Court sustained some of the claims alleged in the Third Amended Complaint, Defendants challenged many elements of Lead Plaintiffs' remaining claims, including, among other things, the falsity of Defendants' statements, Defendants' scienter, loss causation, and damages. Absent the Settlement, there is simply no guarantee that Lead Plaintiffs would have been able to establish the elements of their remaining claims. Further, even if Lead Plaintiffs were successful in sustaining their claims, they faced the prospect of protracted litigation through additional costly fact and expert discovery, additional contested motions, a trial, post-trial motion practice, and likely ensuing appeals. The Settlement avoids these risks while providing a substantial, certain, and immediate benefit to the Settlement Class in the form of a $32 million cash payment. Significantly, Altisource has publicly disclosed that only $4 million of the Settlement Amount came from its insurance, while the remaining $28 million was contributed from the Company's own funds. This substantial contribution from the Company highlights both Defendants' limited ability to pay a larger judgment after trial and the remarkable result achieved by Lead Plaintiffs in the face of a tenacious defense. In light of these considerations, Lead Plaintiffs and Lead Counsel respectfully submit that the Settlement warrants final approval by the Court.

In addition, Lead Plaintiffs believe that the Plan of Allocation, which is set forth in the Notice disseminated to the Settlement Class, is a fair and reasonable method for allocating the Net Settlement Fund to eligible Class Members and also warrants the Court's approval. Finally, Lead Plaintiffs respectfully request that the Court affirm its determinations in the Preliminary Approval Order certifying the Settlement Class for Settlement purposes only.

## II.     THE SETTLEMENT MERITS APPROVAL BY THE COURT

Public and judicial policy both strongly favor pretrial settlement of litigation. *See, e.g.*, *In re HealthSouth Corp. Sec. Litig.*, 572 F.3d 854, 862 (11th Cir. 2009) ("Public policy strongly favors the pretrial settlement of class action lawsuits."); *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984) ("our judgment is informed by the strong judicial policy favoring

settlement"); *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1341 (S.D. Fla. 2011) (the Court's "Rule 23(e) analysis should be 'informed by the strong judicial policy favoring settlements as well as the realization that compromise is the essence of settlement'") (quoting *In re Chicken Antitrust Litig. Am. Poultry*, 669 F.2d 228, 238 (5th Cir. Unit B 1982)).[3] The policy in support of settlement is particularly strong in class actions and other complex litigation, where continued litigation would require the expenditure of substantial public and private resources. *See, e.g.*, *In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992) (public policy favors settlement of class action lawsuits because they "can occupy a court's docket for years on end, depleting the resources of the parties and the taxpayers"); *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977) ("Particularly in class action suits, there is an overriding public interest in favor of settlement."); *LiPuma v. Am. Express Co.*, 406 F. Supp. 2d 1298, 1314 (S.D. Fla. 2005) ("there exists 'an overriding public interest in favor of settlement, particularly in class actions that have the well-deserved reputation as being most complex'").

In determining whether to approve a class action settlement under Rule 23(e), the Court considers whether it is "fair, adequate, reasonable and not the product of collusion." *Leverso v. SouthTrust Bank of Al., N.A.*, 18 F.3d 1527, 1530 (11th Cir. 1994); *see also Bennett*, 737 F.2d at 986-87; *Cotton*, 559 F.2d at 1330; *Checking Account Overdraft Litig.*, 830 F. Supp. 2d at 1344; *Strube v. Am. Equity Inv. Life Ins. Co.*, 226 F.R.D. 688, 697 (M.D. Fla. 2005).

In *Bennett*, the Court of Appeals held that the following factors should be considered in evaluating a class action settlement:

> (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved.

737 F.2d at 986; *accord Faught v. Am. Home Shield Corp.*, 668 F.3d 1233, 1240 (11th Cir. 2012); *In re CP Ships Ltd. Sec. Litig.*, 578 F.3d 1306, 1318 (11th Cir. 2009); *In re Sunbeam Sec. Litig.*, 176 F. Supp. 2d 1323, 1329 (S.D. Fla. 2001).

Approval of a class action settlement, including the application of the foregoing factors, "is committed to the sound discretion of the district court." *U.S. Oil*, 967 F.2d at 493; *accord*

---

[3]     All internal quotation marks and citations in quotations are omitted.

*HealthSouth*, 572 F.3d at 859; *Bennett*, 737 F.2d at 986. Additionally, in evaluating a proposed settlement under these factors, the Court "is entitled to rely upon the judgment of experienced counsel for the parties." *Canupp v. Sheldon*, No. 2:04-cv-260, 2009 WL 4042928, at *5 (M.D. Fla. Nov. 23, 2009) (quoting *Cotton*, 559 F.2d at 1330). In reviewing a class action settlement under Rule 23(e), the Court "will not substitute its business judgment for that of the parties; [instead] 'the only question . . . is whether the settlement, taken as a whole, is so unfair on its face as to preclude judicial approval.'" *Checking Account Overdraft Litig.*, 830 F. Supp. 2d at 1341; *see also Cotton*, 559 F.2d at 1330 ("the trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel").

### A.    The Settlement Satisfies the Threshold Consideration of Being the Product of Good-Faith, Arm's-Length Negotiations

A threshold consideration is whether a proposed settlement is the product of fraud or collusion between the parties. "In determining whether there was fraud or collusion, the court examines whether the settlement was achieved in good faith through arms-length negotiations, whether it was the product of collusion between the parties and/or their attorneys, and whether there was any evidence of unethical behavior or want of skill or lack of zeal on the part of class counsel." *Canupp*, 2009 WL 4042928, at *9 (citing *Bennett*, 737 F.2d at 987 n.9). Courts "presume the absence of fraud or collusion in negotiating the settlement, unless evidence to the contrary is offered." W. Rubenstein, A. Conte, & H. Newberg, 4 *Newberg on Class Actions* § 11:51 (4th ed. 2010).

Here, no claim of fraud or collusion in the negotiation of the Settlement could be credibly asserted. The record in this case shows that the Settlement is the product of good-faith, arm's-length settlement negotiations between experienced counsel conducted under the auspices of Judge Phillips, a highly respected and experienced mediator. Moreover, even after the parties accepted Judge Phillips' mediator's recommendation and reached an agreement in principle to settle the litigation, the Parties engaged in extensive negotiations to finalize the comprehensive settlement documentation required under Rule 23. Thus, the settlement-negotiation process here, including the involvement of Judge Phillips, demonstrates beyond question that there was no collusion. *See Holman v. Student Loan Xpress, Inc.*, No. 8:08-cv-305-T-23MAP, 2009 WL 4015573, at *5 (M.D. Fla. Nov. 19, 2009) (finding "no apparent fraud or collusion" where a "settlement [was] the product of . . . arm's-length, 'protracted and contentious' negotiation with a mediator"); *Perez v. Asurion Corp.*, 501 F. Supp. 2d 1360, 1384 (S.D. Fla. 2007) (parties' use of

an "experienced and well-respected mediator" supported the court's finding that the settlement was fair and not the product of collusion).

     **B.**    **The *Bennett* Factors Support Approval of the Settlement**

          **1.**    **The Significant Obstacles to Success at Trial Support Approval of the Settlement**

The first *Bennett* factor is "the likelihood of success at trial . . . ." *Bennett*, 737 F.2d at 986. In assessing Plaintiffs' likelihood of success at trial for purposes of reviewing the Settlement, the Court should not try the merits of the case but should make only a limited inquiry as to "whether the possible rewards of continued litigation with its risks and costs are outweighed by the benefits of settlement." *Strube*, 226 F.R.D. at 697-98; *see also Checking Account Overdraft Litig.*, 830 F. Supp. 2d at 1345 ("The Court is 'not called upon to determine whether the settlement reached by the parties is the best possible deal, nor whether class members will receive as much from a settlement as they might have recovered from victory at trial.'"); *Canupp*, 2009 WL 4042928, at *10 (in reviewing a settlement, "courts are not to decide the merits of the case or resolve unsettled legal questions").

Although Lead Plaintiffs believe that their claims against the Altisource Defendants are meritorious, there were significant obstacles to success in this Action. As discussed below, Lead Plaintiffs faced a very real risk that: (i) they would be unable to establish the materiality or falsity of Defendants' alleged misstatements, or that Defendants' acted with scienter; (ii) the Altisource Defendants would prevail on their argument that the Class Period should be shortened to begin on December 3, 2013, as opposed to April 25, 2013; and (iii) even if Lead Plaintiffs prevailed on liability, the Altisource Defendants would challenge loss causation and the calculation of damages. Furthermore, the risks Lead Plaintiffs faced in this Action were compounded by the fact that the Court had already dismissed several of their claims and expressed some skepticism concerning their remaining claims. In addition, Lead Plaintiffs were tasked with prosecuting their claims on the aggressive discovery and trial schedule set by the Court, with expert submissions due in January, summary-judgment motions due in April, and a trial set for the beginning of July. Indeed, the Altisource Defendants' pending motion to dismiss the Fourth Amended Complaint, Plaintiffs' class-certification motion, and the exchange of expert reports, followed closely by motions for summary judgment, increased the possibility that the Court could further narrow or eliminate claims within the coming months. Further, Lead Plaintiffs faced the very real prospect that, even if they were successful at trial and obtained a

judgment, there would be no insurance remaining to fund that judgment and that Altisource would also be limited in its ability to pay any judgment after trial. Indeed, as has now been disclosed, only $4 million of insurance was used to fund the Settlement, with the remaining $28 million being funded by the Company.

(i)        **Risks to Proving Falsity, Materiality, and Scienter**

The Altisource Defendants strongly contested their liability to the Settlement Class on, *inter alia*, falsity, materiality, and scienter grounds. As detailed in the Ross Declaration, the core sustained allegations in the Action were that the Altisource Defendants misrepresented (i) that Defendant Erbey recused himself from related-party transactions (the "Recusal Claims"), and (ii) that Altisource's Board of Directors exercised independent oversight over Erbey's conflicts of interest (the "Conflicts-of-Interest Claims"). Throughout the litigation, the Altisource Defendants have presented numerous arguments that their public statements concerning both the Recusal Claims and the Conflict-of-Interest Claims were not materially false or misleading. For example, with respect to the Recusal Claims, the Altisource Defendants have vigorously argued that Erbey, in his role as Altisource Chairman, did not vote to approve a related-party transaction between Altisource and Ocwen or any other related company, and, therefore, their public statements concerning Erbey's recusal were accurate and not false or misleading. Thus, despite Lead Plaintiffs' arguments that Erbey's participation in discussions and negotiations of Ocwen-related transactions clearly contradicted Defendants' representations, there was a significant risk that a finder of fact could conclude that, absent an actual vote on a particular transaction, the Altisource Defendants' statements concerning Erbey's recusal were not misleading.

In addition, with respect to the Conflicts-of-Interest Claims, the Altisource Defendants argued once again in their pending motion to dismiss and opposition to class certification, and would have continued to argue at summary judgment, that the large transaction that is the focus of the Fourth Amended Compliant—the force-placed insurance transaction between Altisource, Ocwen and SWBC—is not a related-party transaction because Altisource and Ocwen each transacted with SWBC, not with each other, and, therefore, allegations and evidence concerning that transaction must be dismissed. Since the Court agreed with this argument in its initial dismissal Order on September 4, 2015, there was a real risk that the Court could once again agree with the Altisource Defendants' position on this issue.

Furthermore, throughout the litigation, the Altisource Defendants heavily emphasized the fact that Altisource, unlike Ocwen, was never the subject of an SEC or NY DFS enforcement action. While regulators' failure to prosecute is not determinative exculpatory evidence, a trier of fact could place significant weight on that nonprosecution when determining liability in this case.

Finally, even if the Court were to determine that the Altisource Defendants' statements were misleading, the Altisource Defendants had strong arguments that scienter was lacking. For example, the Altisource Defendants would have continued to argue that, because Erbey and Altisource reasonably believed that Erbey recused himself from related-party transactions by simply abstaining from the formal approval process, Lead Plaintiffs would be unable to establish scienter with respect to the Recusal Claims. Defendants would also likely have argued against scienter based on the lack of any admission by Altisource, the lack of any regulatory findings against Altisource, and the lack of any large insider stock sales. Furthermore, Defendants likely would have argued that they disclosed many related-party transactions involving Altisource and Erbey's active involvement in the business, such that the market was aware of the allegedly misrepresented or omitted facts about his role. And a jury might have rejected Plaintiffs' scienter arguments in light of the fact that any imbalance in the related-party transactions at issue was favorable for Altisource's revenues.

### (ii)        Risks Regarding a Shortened Class Period

Another very significant risk in this litigation was that the Altisource Defendants would prevail in their argument that the Class Period must be shortened to begin on December 3, 2013, seven months later than the April 5, 2013 date Lead Plaintiffs alleged started the Class Period. Altisource did not specifically represent to investors that Erbey would "recuse" himself from related-party transactions until December 3, 2013. Before that date, the Altisource Defendants represented that Altisource "will also seek to manage [Erbey's] personal conflicts through . . . oversight by the independent members of our Board of Directors." The Altisource Defendants argued that Lead Plaintiffs' claim based on this "oversight" statement had not been sustained by the Court and, in any event, this statement was not false or misleading because the independent directors were involved in approving the related-party transactions. If the Altisource Defendants prevailed on this issue, the Class Period would be shortened to December 3, 2013 through December 21, 2014, inclusive, and thousands of Class Members who purchased shares from April 25 through December 2, 2013 would be excluded from recovering any of their losses.

(iii)        **Risks of Establishing Loss Causation and Damages**

The calculation and proof of the damages suffered by the Settlement Class also presented complicated and difficult issues in the Action. To prove damages in this securities case, Lead Plaintiffs bear the burden of establishing "loss causation," i.e., that Altisource's statements caused their alleged losses. *See Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 345-46 (2005). To establish loss causation, Lead Plaintiffs must demonstrate a sufficient connection between the fraudulent conduct and the losses suffered. *See Meyer v. Greene*, 710 F.3d 1189, 1196-97 (11th Cir. 2013). In this case, Defendants had a strong loss-causation defense that presented a significant risk to Lead Plaintiffs' ability to satisfy their burden of showing that the losses suffered by the Settlement Class were attributable to each of the alleged partial corrective disclosures on February 26, 2014, August 4, 2014, November 11, 2014, and December 22, 2014.

Moreover, the Altisource Defendants had substantial arguments that the decline in Altisource's stock price during the Class Period was caused not by Defendants' alleged misstatements, but instead caused entirely by—or cannot be separated from—concerns over Altisource's businesses prospects in light of the contemporaneous intense regulatory scrutiny on Ocwen, Altisource's largest client. Defendants also had serious arguments that the negative news on the alleged corrective-disclosure dates concerned not only the alleged misrepresentations and omissions but also other matters that were not part of the limited claims sustained by the Court, and that Lead Plaintiffs did not—and could not—disaggregate the price impact of the actionable disclosures from that of the non-actionable disclosures.

In sum, even though Lead Plaintiffs had prevailed in part at the motion-to-dismiss stage on their Recusal Claims and Conflicts-of-Interest Claims, they faced a substantial risk that the Court would find that they had failed to establish liability or damages as a matter of law at summary judgment, or, if the Court were to permit the claims to proceed to trial, that a jury would find against Lead Plaintiffs. Moreover, there was a substantial risk that the Court could conclude that certain of these claims failed as a matter of law in response to the Altisource Defendants' pending motion to dismiss the Fourth Amended Complaint. If granted, that motion would have resulted in a shortened Class Period, leaving thousands of potential Class Members with no recovery. Although Lead Plaintiffs and Lead Counsel strongly believe that the claims asserted against Defendants have merit, they recognize that there would be substantial risks to

establishing each of these allegations and prevailing on Lead Plaintiffs' claims on the Altisource Defendants' motions for summary judgment, at trial, and on appeal.

> **2.      Considering the Range of Possible Recoveries, the Settlement Amount is Clearly Within the Range of Reasonableness**

"The second and third factors in the Eleventh Circuit's *Bennett* analysis call for the Court to determine 'the possible range of recovery' and then ascertain where within that range 'fair, adequate, and reasonable settlements lie.'" *Garst v. Franklin Life Ins. Co.*, No. 97-C-0074-S, 1999 U.S. Dist. LEXIS 22666, at \*64 (N.D. Ala. June 25, 1999) (quoting *Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 541-42 (S.D. Fla. 1988), *aff'd*, 899 F.2d 21 (11th Cir. 1990)); *see also Sunbeam*, 176 F. Supp. 2d at 1331 ("[t]he second and third considerations of the *Bennett* test are easily combined").

In this Action, when compared to the range of possible recoveries at trial and the risks of continued litigation, the proposed Settlement represents an excellent recovery and clearly falls within the range of reasonableness. Had Lead Plaintiffs overcome all of the liability, loss-causation and damages risks discussed above, the Class's estimated maximum recoverable damages at trial were in the range of approximately $400 million. However, if Defendants prevailed on their argument that the Class Period should be shortened because Defendants did not even represent that Erbey "recused" himself from related-party transactions until December 2013, which as detailed in the Ross Declaration was a real risk, maximum recoverable damages would have been reduced to approximately $300 million. Thus, the $32 million Settlement represents approximately 10% of the Settlement Class's likely recoverable damages, which is well within any "range of reasonableness." Indeed, courts often approve class settlements representing similar or lower percentages of recoverable damages. *See, e.g.*, *Checking Account Overdraft Litig.*, 830 F. Supp. 2d at 1344-45 (finding that settlement providing 9% of class's potential recovery was reasonable); *In re China Sunergy Sec. Litig.*, No. 07 Civ. 7895 (DAB), 2011 WL 1899715, at \*5 (S.D.N.Y. May 13, 2011) (finding that settlements in the range of 3% to 7% of estimated losses in securities cases are common and reasonable).

Moreover, if Defendants prevailed on their falsity or scienter arguments, there would have been no recovery for the Class. Accordingly, this factor also weighs strongly in favor of approval of the Settlement.

### 3. The Complexity, Expense, and Likely Duration of Continued Litigation Support Approval of the Settlement

This Action has been challenging and complex, given the complicated facts and law at issue in the litigation. Moreover, based on the volume of evidence obtained and reviewed (including over one million pages of documents), the complexity of the issues involved, and the tenacity of the Altisource Defendants and their counsel, Lead Plaintiffs reasonably expected that the continuing prosecution of the Action through the completion of discovery, summary judgment, and trial would have involved a substantial amount of additional work by counsel.

To obtain a judgment at trial, Lead Plaintiffs would need to complete fact and expert discovery, including depositions of numerous Altisource employees and various third parties; brief additional motions (including the inevitable summary-judgment and *Daubert* motions); and convince a jury that the Altisource Defendants perpetrated a fraud upon investors, and that this conduct caused the Settlement Class's losses. Trial would involve the significant challenge of proving the required elements of Lead Plaintiffs' Section 10(b) claims, including that the alleged misstatements were materially false and misleading, were made with scienter, and caused the Class's losses. These efforts would require the additional significant resources over an extended period, after which the Class might obtain a result far less beneficial than the one provided by the Settlement, especially in light of the Altisource Defendants' wasting insurance coverage.

Furthermore, even a jury verdict in favor of the Class would not guarantee a recovery of damages for the Class. *See, e.g.*, *In re BankAtlantic Bancorp, Inc. Sec. Litig.*, 2011 WL 1585605, at *1 (S.D. Fla. Apr. 25, 2011) (overturning jury verdict in favor of plaintiff class and granting judgment for defendants as a matter of law). Indeed, the Altisource Defendants would undoubtedly appeal any verdict favorable to the Settlement Class, and the appellate process could last several years, with no assurance of a favorable outcome for Lead Plaintiffs.

In sum, were this action to be tried to a conclusion instead of settled, it would be complex, time consuming, and expensive, with the prospects of obtaining a recovery greater than that provided by the Settlement—or any recovery at all—far from assured. In contrast to the substantial expense of litigating the case through trial and the extended delay that would result from the trial itself, post-trial motions, and appeals, the Settlement provides an immediate and certain benefit in the form of a $32 million all-cash recovery. *See, e.g.*, *Checking Account Overdraft Litig.*, 830 F. Supp. 2d at 1345-46; *Canupp*, 2009 WL 4042928, at *12. Accordingly, the complexity-and-duration-of-litigation factor also strongly supports the Settlement.

11

4.    **Class Members' Reaction to Date Supports Approval of the Settlement**

Class members' reaction to a proposed settlement is a significant factor, and the absence of substantial objections "is excellent evidence of the settlement's fairness and adequacy." *Ressler v. Jacobson*, 822 F. Supp. 1551, 1556 (M.D. Fla. 1992); *see also LiPuma*, 406 F. Supp. 2d at 1324 (finding that the "reaction of the class is an important factor"); *Access Now, Inc. v. Claire's Stores, Inc.*, No. 00-14017-CIV, 2002 WL 1162422, at *7 (S.D. Fla. May 7, 2002) ("The fact that no objections have been filed strongly favors approval of the settlement.").

Here, the Settlement Class' reaction to the Settlement to date has been uniformly positive. In accordance with the Court's Preliminary Approval Order dated February 10, 2017 (ECF No. 251), the Court-approved Claims Administrator, Garden City Group, LLC ("GCG"), began mailing copies of the Notice and Claim Form (collectively, the "Notice Packet") to potential Class Members and nominees beginning on March 10, 2017. *See* Declaration of Jose C. Fraga (the "Fraga Decl."), attached to the Ross Decl. as Exhibit 1, at ¶¶ 2-9. Through April 24, 2017, more than 17,800 copies of the Notice Packet have been mailed to potential Class Members and nominees. In addition, the Summary Notice was published in the *Wall Street Journal* and transmitted over the PR Newswire on March 23, 2017, and copies of the Notice, Claim Form, Stipulation, Preliminary Approval Order, and Complaint have been posted to the website established for the Action, www.AltisourceSecuritiesLitigation.com. *See id.* ¶¶ 10, 12.

The Notice (a copy of which is attached as Exhibit A to the Fraga Decl.) advised potential Class Members of, among other things, (i) their right to exclude themselves from the Class, (ii) their right to object to any aspect of the Settlement or the Plan of Allocation, and (iii) the method for submitting a Claim Form in order to be eligible for a payment from the proceeds of the Settlement. The Court-ordered deadline for submitting objections is May 9, 2017. To date, no objections to the Settlement have been received.[4] Lead Counsel will file reply papers on or before May 23, 2017, after the deadline for submitting objections has passed, and the reply papers will address any objections that may be received.

---

[4]     Additionally, to date, no requests for exclusion from the Settlement Class have been received. As with objections, the deadline for requesting exclusion is May 9, 2017.

5.     **The Settlement Was Reached After Substantial Discovery and Motion Practice and, Thus, the Stage of the Proceedings Strongly Supports Approval of the Settlement**

The stage at which a settlement is reached supports approval when plaintiffs and their counsel had "access to sufficient information to adequately evaluate the merits of the case and weigh the benefits of the settlement against further litigation." *Perez*, 501 F. Supp. 2d at 1383; *accord LiPuma*, 406 F. Supp. 2d at 1324. Here, the Settlement was reached only after two years of intensive litigation and after Lead Plaintiffs had filed four detailed amended complaints based on Lead Counsel's comprehensive investigation, and conducted extensive fact and expert discovery, including reviewing and analyzing over one million pages of documents produced by Defendants and third parties. Lead Plaintiffs also briefed multiple contentious motions to dismiss; prepared and filed a motion for class certification; researched, drafted, and filed several motions to compel the production of party and third-party documents; opposed two motions for protective orders and a motion to compel filed by the Altisource Defendants; and prepared and served two detailed expert reports on Defendants.

Indeed, the mediation process itself further enhanced each side's appreciation of the risks it would have faced in further litigation, as the mediation involved the submission of extensive ex parte presentations to Judge Phillips, as well as numerous telephonic discussions and sessions with Judge Phillips that included, among other things, the parties' respective positions on liability and damages. In sum, by the time the Settlement was reached, each side had sufficient information to assess the strengths and weaknesses of its claims, and "was well aware of the other side's position and the merits thereof." *Sunbeam*, 176 F. Supp. 2d at 1332. Accordingly, this factor also strongly supports approval of the Settlement.

C.     **The Recommendations of Experienced Counsel and Plaintiffs Heavily Favor Approval of the Settlement**

In determining whether the proposed Settlement is fair, adequate, and reasonable, the Court may rely on the judgment of counsel and, indeed, "should be hesitant to substitute its own judgment for that of counsel." *Cotton*, 559 F.2d at 1330; *accord Perez*, 501 F. Supp. 2d at 1380; *Strube*, 226 F.R.D. at 703. Lead Counsel, who are highly experienced in class-action litigation of this type and are well informed about the strengths and weaknesses of this case following over two years of hard-fought litigation, strongly endorse the Settlement and believe that it represents an excellent recovery for the Settlement Class. *See* Ross Decl. ¶¶ 109-130.

Moreover, Lead Plaintiffs, which are sophisticated institutional investors, closely supervised this litigation and strongly endorse the Settlement. *See* Lead Plaintiffs' Declaration, attached to Ross Decl. as Ex. 2, at ¶¶ 4-6. The endorsement of a settlement by PSLRA Lead Plaintiffs that have played an active role in the litigation and the settlement process provides additional support for the settlement's fairness.[5] *See, e.g.*, *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 462 (S.D.N.Y. 2004).

## III.   THE COURT SHOULD APPROVE THE PLAN OF ALLOCATION

The objective of a plan of allocation is to provide an equitable method for distributing a settlement fund among eligible class members. The standard for approval of a plan of allocation is the same as that for approving a settlement: whether it is "fair, adequate and reasonable and is not the product of collusion between the parties." *Chicken Antitrust Litig.*, 669 F.2d at 238. A plan of allocation is fair and reasonable as long as it has a "rational basis." *In re Hi-Crush Partners L.P. Sec. Litig.*, No. 12-cv-8557, 2014 WL 7323417, at *10 (S.D.N.Y. Dec. 19, 2014). In determining whether a plan of allocation is fair and reasonable, courts give weight to the opinion of experienced counsel. *See Yang v. Focus Media Holding Ltd.*, No. 11 Civ. 9051, 2014 WL 4401280, at *9 (S.D.N.Y. Sept. 4, 2014); *In re Giant Interactive Grp., Inc. Sec. Litig.*, 279 F.R.D. 151, 163 (S.D.N.Y. 2011).

Here, the proposed Plan of Allocation, which was developed by Lead Plaintiffs' damages expert in consultation with Lead Counsel, is a fair and reasonable method for allocating the Net Settlement Fund among eligible Class Members who submit valid Claim Forms. To develop the Plan of Allocation, Lead Plaintiffs' damages expert analyzed the allegations remaining in the Action after the Court's ruling on Defendants' second motion to dismiss. He then calculated the estimated amount of alleged artificial inflation in the per share price of Altisource common stock that was allegedly proximately caused by Defendants' alleged materially false and misleading statements and omissions. In calculating this estimated alleged artificial inflation, he considered price changes in Altisource common stock in reaction to public disclosures that allegedly corrected the alleged misrepresentations and omissions, adjusting those price changes for market and industry factors and for non-fraud-related Altisource-specific information. *See* Notice ¶ 54.

---

[5]   The Settlement also has the approval of Plaintiff West Palm Beach Firefighters. *See West Palm Beach Firefighters' Declaration*, attached to Ross Decl. as Ex. 3, at ¶¶ 4-5.

Under the Plan of Allocation, a "Recognized Loss Amount" will be calculated for each purchase or acquisition of Altisource common stock during the Class Period that is listed in the Claim Form and for which adequate documentation is provided by the claimant. *See* Notice ¶ 57. Under the Plan, the sum of a claimant's Recognized Loss Amounts is the Claimant's "Recognized Claim," and the Net Settlement Fund will be allocated to Authorized Claimants *pro rata* based on the relative size of their Recognized Claims. *Id.* ¶¶ 61-62.

In general, the Recognized Loss Amount calculated under the Plan of Allocation will be the difference between the estimated artificial inflation on the date of purchase and the estimated artificial inflation on the date of sale, or the difference between the actual purchase price and the sale price, whichever is less. *Id.* ¶ 58. Also, under the Plan of Allocation, those investors who bought and then sold shares "before the relevant truth begins to leak out" have no recognized losses because "the misrepresentation will not have led to any loss." *Dura*, 544 U.S. at 342. Thus, claimants who purchased shares during the Class Period but did not hold those shares through at least one partial corrective disclosure will have no Recognized Loss Amount as to those transactions. *Id.* ¶ 55.

Lead Counsel believe that the Plan of Allocation is a fair and reasonable method for equitably allocating the Net Settlement Fund among Class Members who suffered losses as a result of the conduct alleged in the Action. Moreover, as noted above, as of April 24, 2017, more than 17,800 copies of the Notice, which contains the proposed Plan of Allocation and advises Class Members of their right to object to the Plan of Allocation, have been sent to potential Class Members and their nominees. *See* Fraga Decl. ¶ 9. To date, no objections to the proposed Plan of Allocation have been received.

## IV.    NOTICE TO THE SETTLEMENT CLASS SATISFIED RULE 23 AND DUE PROCESS

Notice to the Settlement Class of the proposed Settlement satisfied Rule 23's requirement of "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B); *see also Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173–75 (1974). The Notice also satisfied Rule 23(e)(1)'s requirement that notice of a settlement be "reasonable"—i.e., it must "fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings." *Wal-Mart Stores, Inc. v. Visa U.S.A.*, 396 F.3d 96, 114 (2d Cir. 2005).

Both the Notice's substance and the method of its dissemination to potential Class Members satisfied these standards. The Notice contains the information required by Rule 23(c)(2)(B) and the PSLRA, 15 U.S.C. § 78u-4(a)(7), including: (i) the nature of the Action and the claims asserted; (ii) the definition of the Settlement Class; (iii) the Settlement's basic terms, including the amount of the consideration and the releases to be given; (iv) the Plan of Allocation; (v) the reasons why the Settling Parties are proposing the Settlement; (vi) the maximum amount of attorneys' fees and expenses that will be sought; (vii) a description of Class Members' right to request exclusion from the Settlement Class or to object to the Settlement, the Plan of Allocation, or the requested attorneys' fees or expenses; and (viii) notice of the binding effect of a judgment on Class Members. The Notice also provides information on how to submit a Claim Form in order to potentially receive a distribution from the Net Settlement Fund.

As noted above, in accordance with the Preliminary Approval Order, as of April 24, 2017, GCG has mailed more than 17,800 copies of the Notice Packet by first-class mail to potential Class Members and nominees. *See* Ex. 1, ¶ 9. GCG also caused the Summary Notice to be published on March 23, 2017. *Id.* ¶ 10. In addition, GCG established a website dedicated to the Action, www.AltisourceSecuritiesLitigation.com, to provide potential Class Members with information about the Settlement and the applicable deadlines, as well as access to downloadable copies of the Notice (including the Plan of Allocation), Claim Form, Stipulation, Preliminary Approval Order, and Complaint. *Id.* ¶ 11.

This combination of individual notice by first-class mail to all members of the Settlement Class who could be identified with reasonable effort, supplemented by notice in a widely circulated publication, transmission over a newswire, and availability on internet websites, was "the best notice . . . practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B); *see, e.g.*, *In re Advanced Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. 171, 182–83 (S.D.N.Y. 2014).

## V.     CLASS CERTIFICATION

The Court's February 10, 2017 Preliminary Approval Order certified the Settlement Class for Settlement purposes only under Rules 23(a) and (b)(3). ECF No. 251. Nothing has changed to alter the propriety of class certification for Settlement purposes and, for all the reasons stated in Lead Plaintiffs' Preliminary Approval Brief (ECF No. 250), Lead Plaintiffs respectfully request that the Court affirm its determinations in the Preliminary Approval Order certifying the Settlement Class under Rules 23(a) and (b)(3).

## VI.     CONCLUSION

Lead Plaintiffs respectfully request that the Court approve the Settlement and Plan of Allocation as fair, reasonable, and adequate.

Dated: April 25, 2017                            /s/ *Hannah G. Ross*

Hannah G. Ross (admitted pro hac vice)
Jai K. Chandrasekhar (admitted pro hac vice)
Lauren A. Ormsbee (admitted pro hac vice)
**BERNSTEIN LITOWITZ BERGER &**
**   GROSSMANN LLP**
1251 Avenue of the Americas
New York, NY 10020
Telephone:  (212) 554-1400
Facsimile:  (212) 554-1444
hannah@blbglaw.com
jai@blbglaw.com
lauren@blbglaw.com

*Lead Counsel for Lead Plaintiffs the Pension*
*Fund for the Painters and Allied Trades*
*District Council 35 and the Annuity Fund for*
*the Painters and Allied Trades District Council*
*35 and the Settlement Class*

Maya S. Saxena (FL Bar No. 0095494)
Joseph E. White, III (FL Bar No. 621064)
**SAXENA WHITE P.A.**
5200 Town Center Circle, Suite 601
Boca Raton, FL 33486
Telephone:  (561) 394-3399
Facsimile:  (561) 394-3382
msaxena@saxenawhite.com
jwhite@saxenawhite.com

*Liaison Counsel for Lead Plaintiffs the*
*Pension Fund for the Painters and Allied*
*Trades District Council 35 and the Annuity*
*Fund for the Painters and Allied Trades*
*District Council 35 and the Settlement Class*

17

## LOCAL RULE 7.1(a)(3) CERTIFICATION

Lead Counsel certify in accordance with Local Rule 7.1(a)(3) that they have conferred with counsel for the Altisource Defendants, who (i) agree that the proposed Settlement should be approved and (ii) take no position with respect to the proposed Plan of Allocation.

Dated: April 25, 2017

/s/ *Hannah G. Ross*

Hannah G. Ross (admitted pro hac vice)
Lauren A. Ormsbee (admitted pro hac vice)
**BERNSTEIN LITOWITZ BERGER &
  GROSSMANN LLP**
1251 Avenue of the Americas
New York, NY 10020
Telephone: (212) 554-1400
Facsimile: (212) 554-1444
hannah@blbglaw.com
lauren@blbglaw.com

*Lead Counsel for Lead Plaintiffs the Pension Fund for the Painters and Allied Trades District Council 35 and the Annuity Fund for the Painters and Allied Trades District Council 35 and the Settlement Class*

Maya S. Saxena (FL Bar No. 0095494)
Joseph E. White, III (FL Bar No. 621064)
**SAXENA WHITE P.A.**
5200 Town Center Circle, Suite 601
Boca Raton, FL 33486
Telephone: (561) 394-3399
Facsimile: (561) 394-3382
msaxena@saxenawhite.com
jwhite@saxenawhite.com

*Liaison Counsel for Lead Plaintiffs the Pension Fund for the Painters and Allied Trades District Council 35 and the Annuity Fund for the Painters and Allied Trades District Council 35 and the Settlement Class*

18

## <u>CERTIFICATE OF SERVICE</u>

I certify that on April 25, 2017, I electronically filed Lead Plaintiffs' Motion for Final Approval of Class Action Settlement and Plan of Allocation, and Incorporated Memorandum of Law, using the CM/ECF system.

I certify that the foregoing is true and correct.

Executed on April 25, 2017.

/s/ Lester Hooker
Lester Hooker