**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

In re: Altisource Portfolio Solutions, S.A.
Securities Litigation

Case 14-81156 CIV-WPD

**LEAD COUNSEL'S MOTION FOR**
**AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF**
**LITIGATION EXPENSES, AND INCORPORATED MEMORANDUM OF LAW**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................................... iii

MOTION           ...................................................................................................... 1

MEMORANDUM OF LAW ......................................................................................... 1

I.           PRELIMINARY STATEMENT ..................................................................... 2

II.          ARGUMENT ................................................................................................ 4

    A.   A Reasonable Percentage of the Fund Recovered Is the Appropriate
        Method to Use in Awarding Attorneys' Fees in the Eleventh Circuit .................... 4

    B.   The 22% Fee Request Is Less Than the Eleventh Circuit's Benchmark Fee
        Award ................................................................................................................. 5

    C.   The Percentage Fee Approved by Lead Plaintiffs Is Entitled to a
        Presumption of Reasonableness ......................................................................... 6

    D.   Additional Factors Confirm That the Requested Fee is Fair and
        Reasonable ......................................................................................................... 7

        1.   The Time and Labor Required ................................................................. 8

        2.   The Novelty and Difficulty of the Issues ................................................ 10

        3.   The Skill Required to Perform the Legal Services Properly, and the
            Experience, Reputation, and Ability of the Attorneys .............................. 12

        4.   The Preclusion of Other Employment ...................................................... 13

        5.   The Customary and Contingent Nature of the Fee ................................... 13

        6.   The Amount Involved and Results Achieved ........................................... 15

        7.   The Undesirability of the Case ............................................................... 15

        8.   Awards in Similar Cases ......................................................................... 16

        9.   The Time Required to Reach Settlement .................................................. 16

        10.  The Reaction of the Settlement Class ...................................................... 16

    E.   Lead Counsel's Request for Reimbursement of Litigation Expenses
        Should Also Be Awarded in Full ........................................................................ 17

i

      F.     Plaintiffs Should Be Reimbursed for Their Respective Costs Directly
Related to the Representation of the Settlement Class ...........................................18

III.         CONCLUSION...................................................................................................20

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Allapattah Servs., Inc. v. Exxon Corp.*,
    454 F. Supp. 2d 1185 (S.D. Fla. 2006) ................................................................5

*Behrens v. Wometco Enters., Inc.*,
    118 F.R.D 534 (S.D. Fla. 1988) .........................................................................14

*Boeing Co. v. Van Gemert*,
    444 U.S. 472 (1980) ............................................................................................4

*Camden I Condo. Ass'n, Inc. v. Dunkle*,
    946 F.2d 768 (11th Cir. 1991) .................................................................. *passim*

*Carpenters Health & Welfare Fund v. Coca-Cola Co.*,
    587 F. Supp. 2d 1266 (N.D. Ga. 2008) ..............................................................19

*City Pension Fund for Firefighters & Police Officers in City of Miami Beach v.*
    *Aracruz Celullose S.A., et al.*,
    Case No. 08-23317-C-LENARD, slip op. (S.D. Fla. July 17, 2013)..................6, 19

*City of St. Clair Shores Gen. Emps.'Ret. Sys. v. Lender Processing Servs., Inc.*,
    No. 3:10–cv–01073–TJC–JBT, 2014 WL 12621611 (M.D. Fla. Mar. 4, 2014) ......7

*David v. Am. Suzuki Motor Corp.*,
    No. 08-CV-22278, 2010 WL 1628362 (S.D. Fla. Apr. 15, 2010) .........................12

*Dura Pharm., Inc. v. Broudo*,
    544 U.S. 336 (2005) ..........................................................................................11

*Eslava v. Gulf Tel. Co.*,
    No. 04-0297-KD-B, 2007 WL 4105977 (S.D. Ala. Nov. 16, 2007).......................5

*Fabricant v. Sears Roebuck & Co.*,
    No. 98-1281-Civ., 2002 WL 34477904 (S.D. Fla. Sept. 18, 2002) ........................6

*Faught v. Am. Home Shield Corp.*,
    668 F.3d 1233 (11th Cir. 2012) ...............................................................5, 8, 16

*Flournoy v. Honeywell Int'l, Inc.*,
    No. CV 205-184, 2007 WL 1087279 (S.D. Ga. Apr. 6, 2007)............................5, 6

*Garst v. Franklin Life Ins. Co.*,
    No. 97-C-0074-S, 1999 U.S. Dist. LEXIS 22666 (N.D. Ala. June 25, 1999) .........5

*In re BankAtlantic Bancorp, Inc. Sec. Litig.*,
No. 07-61542-CIV, 2011 WL 1585605 (S.D. Fla. Apr. 25, 2011)..........................................14

*In re BellSouth Corp. Sec. Litig.*,
1:02-cv-2142-WSD, 2007 U.S. Dist. LEXIS 98429 (N.D. Ga. Apr. 9, 2007) ........................6

*In re Carter's, Inc. Sec. Litig.*,
Civ. A. No. 1:08-CV-2940-AT, 2012 WL 12877943 (N.D. Ga. May 31, 2012) ....................7

*In re Cendant Corp. Litig.*,
264 F.3d 201 (3d Cir. 2001).....................................................................................................7

*In re Checking Account Overdraft Litig.*,
830 F. Supp. 2d 1330 (S.D. Fla. 2011) ....................................................................................6

*In re Friedman's Inc. Sec. Litig.*,
No. 1:03-cv-3475-WSD, 2009 WL 1456698 (N.D. Ga. May 22, 2009) ..........................14, 15

*In re Gilat Satellite Networks, Ltd.*,
No. CV-02-1510 (CPS)(SMG), 2007 WL 2743675 (E.D.N.Y. Sept. 18, 2007) ...................20

*In re HealthSouth Corp. Bondholder Litig.*,
Case No. CV-03-BE-1500-S, slip op. (N.D. Ala. July 26, 2010) ...........................................19

*In re HealthSouth Corp. ERISA Litig.*,
No. CV-03-BE-1700-S, 2006 WL 2109484 (N.D. Ala. June 28, 2006)...................................6

*In re Initial Pub. Offering Sec. Litig.*,
671 F. Supp. 2d 467 (S.D.N.Y. 2009).....................................................................................10

*In re Marsh & McLennan Companies Securities Litigation*,
No. 04-8144(CM), 2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009) .........................................19

*In re Marsh ERISA Litig.*,
265 F.R.D. 128 (S.D.N.Y. 2010) ............................................................................................10

*In re MetLife Demutualization Litig.*,
689 F. Supp. 2d 297 (E.D.N.Y. 2010) ......................................................................................4

*In re Mills Corp. Sec. Litig.*,
265 F.R.D. 246 (E.D. Va. 2009) .........................................................................................7, 19

*In re Sterling Fin. Corp. Sec. Class Action*,
No. 07-2171, 2009 WL 2914363 (E.D. Pa. Sept. 10, 2009)...................................................10

*In re Sunbeam Sec. Litig.*,
176 F. Supp. 2d 1323 (S.D. Fla. 2001) .........................................................................6, 10, 13

iv

*In re Terazosin Hydrochloride Antitrust Litig.*,
　　C.A. No. 99-C-7410 (JBZ), 2005 WL 2451958 (S.D. Fla. July 8, 2005)................................6

*In re Terazosin Hydrochloride Antitrust Litig.*,
　　No. 99 MDL 1317, 2005 U.S. Dist. LEXIS 43082 (S.D. Fla. Apr. 19, 2005) ........................6

*In re Veeco Instruments Inc. Sec. Litig.*,
　　No. 05 MDL 01695 (CM), 2007 WL 4115808 (S.D.N.Y.  Nov. 7, 2007) ...........................20

*In re Xcel Energy, Inc. Sec. Derivative & ERISA Litig.*,
　　364 F. Supp. 2d 980 (D. Minn. 2005)........................................................................................20

*Ingram v. Coca-Cola Co.*,
　　200 F.R.D. 685 (N.D. Ga. 2001).................................................................................................10

*Johnson v. Ga. Highway Express, Inc.*,
　　488 F.2d 714 (5th Cir. 1974) .......................................................................................................8

*Jones v. Diamond*,
　　636 F.2d 1364 (5th Cir. 1981) ...................................................................................................14

*Mashburn v. Nat'l Healthcare, Inc.*,
　　684 F. Supp. 679 (M.D. Ala. 1988) ..........................................................................................10

*Mazur v. Lampert, et al.*,
　　Case No. 04-61159-CIV-LENARD/GARBER, slip op. (S.D. Fla.
　　June 19, 2008)...............................................................................................................................19

*Meyer v. Greene*,
　　710 F.3d 1189 (11th Cir. 2013) .................................................................................................11

*Miller v. Dyadic Int'l, et al.*,
　　Case No. No. 07-80948-CIV-DIMITROULEAS, slip op. (S.D. Fla.
　　July 28, 2010)................................................................................................................................19

*Mills v. Elec. Auto-Lite Co.*,
　　396 U.S. 375 (1970).......................................................................................................................4

*Norman v. Hous. Auth. of Montgomery*,
　　836 F.2d 1292 (11th Cir. 1988) .................................................................................................13

*Pinto v. Princess Cruise Lines, Ltd.*,
　　513 F. Supp. 2d 1334 (S.D. Fla. 2007) .................................................................................10, 14

*Ressler v. Jacobson*,
　　149 F.R.D. 651 (M.D. Fla. 1992)................................................................................ *passim*

*Robbins v. Koger Props., Inc.*,
   116 F.3d 1441 (11th Cir. 1997),
   *reh'g en banc denied*, 129 F.3d 617 (11th Cir. 1997)............................................................14

*Sewell v. D'Alessandro & Woodyard, Inc.*,
   No. 2:07-cv-343-FtM-29SPC, 2011 WL 6047085 (M.D. Fla. Dec. 6, 2011)...........................8

*Waters v. Int'l Precious Metals Corp.*,
   190 F.3d 1291 (11th Cir. 1999) ..........................................................................................5, 6, 9

**Statutes and Rules**

Private Securities Litigation Reform Act of 1995 ........................................................................1

15 U.S.C. § 78u-4(a)(4) ..............................................................................................................18

Federal Rules of Civil Procedure Rule 23(h)................................................................................1

**Other Authorities**

1 Alba Conte, *Attorney Fee Awards* (3d ed. 2006).....................................................................17

# MOTION

Court-appointed Lead Counsel Bernstein Litowitz Berger & Grossmann LLP ("Bernstein Litowitz" or "Lead Counsel"), having achieved a recovery of $32,000,000 in cash, plus interest (the "Settlement Fund"), respectfully submit this Motion, on behalf of all Plaintiffs' Counsel,[1] for an order approving Lead Counsel's application for an award of attorneys' fees and reimbursement of Litigation Expenses in the above-captioned action (the "Action").

This Motion is supported by the following Memorandum of Law and by the accompanying Declaration of Hannah G. Ross in Support of: (I) Lead Plaintiffs' Motion for Final Approval of Class Action Settlement and Plan of Allocation, and (II) Lead Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses (the "Ross Declaration" or "Ross Decl.").[2]

# MEMORANDUM OF LAW

Lead Counsel respectfully submit this Memorandum of Law in support of their Motion, under Rule 23(h) of the Federal Rules of Civil Procedure, for an award of attorneys' fees in the amount of 22% of the Settlement Fund, or $7,040,000 plus interest earned at the same rate as earned by the Settlement Fund. Lead Counsel also seek reimbursement of Plaintiffs' Counsel's Litigation Expenses in the amount of $988,206.72. Finally, in accordance with the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), Lead Plaintiffs the Pension Fund for the Painters and Allied Trades District Council 35 and the Annuity Fund for the Painters and Allied Trades District Council 35 ("Lead Plaintiffs" or the "Painters Funds") and Plaintiff West Palm Beach Firefighters' Pension Fund ("West Palm Beach Firefighters", and together with the Painters Funds, "Plaintiffs") seek reimbursement of their costs and expenses directly related to their representation of the Settlement Class in the total amount of $17,978.31.

---

[1]    Plaintiffs' Counsel consist of Lead Counsel Bernstein Litowitz, Liaison Counsel Saxena White P.A. ("Saxena White"), and additional Plaintiffs' Counsel Kahn Swick & Foti, LLC.

[2]    Unless otherwise defined in this memorandum, all capitalized terms have the meanings defined in the Stipulation and Agreement of Settlement, dated February 8, 2017 (the "Settlement Stipulation") (ECF No. 250) or in the Ross Declaration.

## I.   PRELIMINARY STATEMENT[3]

The proposed Settlement, which provides for a cash payment of $32,000,000 in exchange for the resolution of all claims in the Action, represents a very favorable result for the Settlement Class. In undertaking this litigation, counsel faced numerous challenges to proving both liability and damages that posed the serious risk of no recovery, or a lesser recovery than the Settlement, for the Settlement Class. The significant recovery obtained was achieved through the skill, tenacity, and effective advocacy of Lead Counsel, who litigated this Action on a fully contingent basis against highly skilled defense counsel.

As detailed in the accompanying Ross Declaration, Lead Counsel vigorously pursued this litigation from its outset. Among other things, Lead Counsel (i) conducted a wide-ranging investigation into the claims asserted in the Action, including a detailed review and analysis of a large volume of publicly available information, which included relevant SEC filings, earnings announcements, press releases, investor presentations, new articles, analysts' reports, transcripts of analyst conference calls, and other public disclosures, including the December 22, 2014 Consent Order entered into by Altisource's former parent, Ocwen Financial Corporation ("Ocwen"), and the New York Department of Financial Services ("NY DFS"); (ii) identified and communicated with numerous former Altisource and Ocwen employees; (iii) retained and consulted with various experts, including an expert on conflicts of interest and a damages and loss-causation expert, each of whom drafted substantive expert reports; (iv) prepared and filed four fact-intensive Amended Complaints; (v) researched, drafted, and filed oppositions to two rounds of motions to dismiss filed by Defendants, as well as supplemental briefs in further opposition to Defendants' motions to dismiss; (vi) researched, drafted, and filed an opposition to Defendants' motion for partial reconsideration of the Court's December 21, 2015 decision on Defendants' motions to dismiss; (vii) researched, drafted, and filed Plaintiffs' motion for class certification and Plaintiffs' reply brief in support of that motion; (viii) researched, drafted, and filed several motions to compel the

---

[3]       The Ross Declaration is an integral part of this submission and, for the sake of brevity in this memorandum, Lead Plaintiffs respectfully refer the Court to it for a detailed description of, among other things: the history of the Action, the nature of the claims asserted, and a description of the services Lead Counsel provided for the benefit of the Settlement Class (¶¶ 4, 19-101); the negotiations leading to the Settlement and the terms of the Settlement (¶¶ 102-107); the risks and uncertainties of continued litigation (¶¶ 109-130); and the terms of the Plan of Allocation for the Settlement proceeds (¶¶ 137-144).

production of party and third-party documents and responded to two motions for protective orders and a motion to compel filed by Defendants; (ix) engaged in extensive discovery, including the review and analysis of over one million pages of documents produced by Defendants and third parties; and (x) engaged in extensive, arm's-length settlement negotiations with the assistance of a private mediator, former U.S. District Judge Layn R. Phillips, which included numerous settlement discussions and several submissions on damages and liability.

The Settlement achieved through Lead Counsel's efforts is a particularly favorable result when juxtaposed against the significant procedural and substantive hurdles that Lead Plaintiffs would have had to overcome in order to prevail in this complex securities fraud litigation. In undertaking this litigation, Lead Counsel faced numerous substantial challenges to establishing liability, loss causation, and damages, as further detailed below and in the Ross Declaration. The risk of losing was very real, and it was greatly enhanced by the fact that Lead Counsel would be litigating against a publicly traded corporate defendant, represented by highly skilled defense counsel, under the heightened pleading standards of the PSLRA. Plaintiffs also faced a real risk that, even if they proved their case, Defendants would not be able to fund a judgment. Indeed, as detailed in the Ross Declaration, Defendants had limited insurance and limitations on the Company's ability to fund a judgment or settlement. Despite these risks, Plaintiffs' Counsel collectively worked over 14,400 hours over the course of more than two years, all on a contingency basis with no guarantee of ever being paid. Indeed, the only guarantees were that the case would be complex and hard fought, and that Lead Counsel would receive nothing if they lost.

In light of the recovery obtained (including that $28 million of the $32 million Settlement Amount was contributed by the Company), the time and effort devoted by Plaintiffs' Counsel, the work performed, the skill and expertise required, and the risks that counsel undertook, Lead Counsel submit that the requested fee award and the reimbursement of incurred expenses are fair and reasonable. Indeed, the requested fee is toward the low end of the range of attorneys' fees awarded in similar complex contingency cases. Also, the expenses for which Lead Counsel seek reimbursement were reasonable and necessary for the successful prosecution of the Action.

Plaintiffs, which are sophisticated institutional investors that actively supervised the Action, have evaluated the request for fees and believe it to be fair and reasonable. *See* Declaration of William McDevitt, Administrator of the Pension Fund for the Painters and Allied Trades District Council 35 and the Annuity Fund for the Painters and Allied Trades District Council 35 (Ex. 2 to

the Ross Decl.) (the "McDevitt Decl."), at ¶¶ 7-8; and Declaration of David Merrell, Chairman of the Board of Trustees of the West Palm Beach Firefighters' Pension Fund (Ex. 3 to the Ross Decl.) (the "Merrell Decl."), at ¶¶ 6-7.

In addition, in accordance with the Preliminary Approval Order, 17,811 copies of the Notice have been mailed to potential Class Members and their nominees through April 24, 2017, and the Summary Notice was published in the *Wall Street Journal* and transmitted over the PR Newswire. *See* Declaration of Jose C. Fraga (Ex. 1 to the Ross Decl.) (the "Fraga Decl."), at ¶¶ 2-10. The Notice advised potential Settlement Class Members that Lead Counsel would apply for an award of attorneys' fees in amount not to exceed 22% of the Settlement Fund and reimbursement of Litigation Expenses (including reimbursement of the reasonable costs and expenses of Plaintiffs) in an amount not to exceed $1,200,000. *See* Notice, attached as Exhibit A to Fraga Decl., at ¶¶ 5, 71. The fees and expenses sought by Lead Counsel do not exceed the amounts stated in the Notice. While the deadline set by the Court for Settlement Class Members to object to the requested attorneys' fees and expenses has not yet passed, to date, no objections to the requests for fees and expenses have been received.

For all the reasons discussed in this memorandum and in the Ross Declaration, Lead Counsel respectfully submit that the requested attorneys' fees and expenses are fair and reasonable under applicable legal standards and, therefore, should be awarded by the Court.

## II.   ARGUMENT

### A.   A Reasonable Percentage of the Fund Recovered Is the Appropriate Method to Use in Awarding Attorneys' Fees in the Eleventh Circuit

Courts have long recognized that attorneys who represent a class and achieve a benefit for class members are entitled to be compensated for their services, and that, where a class plaintiff successfully obtains a common settlement fund, the costs of litigation should be spread among the beneficiaries of that fund. Thus, attorneys who obtain a recovery for a class in the form of a common fund are entitled to an award of fees and expenses from that fund as compensation for their work. *See Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 392 (1970); *Camden I Condo. Ass'n, Inc. v. Dunkle*, 946 F.2d 768, 771 (11th Cir. 1991). Courts have also recognized that, in addition to providing just compensation, awards of attorneys' fees from a common fund serve to "encourage skilled counsel to represent those who seek redress for damages inflicted on entire classes of persons, and to discourage future misconduct of a similar nature." *In re MetLife Demutualization Litig.*, 689 F. Supp. 2d 297, 356 (E.D.N.Y.

2010); *accord Allapattah Servs., Inc. v. Exxon Corp.*, 454 F. Supp. 2d 1185, 1217 (S.D. Fla. 2006) ("Attorneys who undertake the risk to vindicate legal rights that may otherwise go unredressed function as 'private attorneys general.' . . . Unless that risk is compensated with a commensurate reward, few firms, no matter how large or well financed, will have any incentive to represent the small stake holders in class actions against corporate America, no matter how worthy the cause or wrongful the defendant's conduct."); *Ressler v. Jacobson*, 149 F.R.D. 651, 657 (M.D. Fla. 1992) ("public policy favors the granting of counsel fees sufficient to reward counsel for bringing these actions and to encourage them to bring additional such actions").

In *Camden I*, the Eleventh Circuit announced the rule that "attorneys' fees awarded from a common fund shall be based upon a reasonable percentage of the fund established for the benefit of the class." 946 F.2d at 774; *accord Faught v. Am. Home Shield Corp.*, 668 F.3d 1233, 1242 (11th Cir. 2012); *Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1294 (11th Cir. 1999). A percentage-based fee award accomplishes several objectives:

> First, it is consistent with the private market place where contingent fee attorneys are regularly compensated on a percentage of recovery method. Second, it provides a strong incentive to plaintiffs' counsel to obtain the maximum possible recovery in the shortest time possible under the circumstances. Finally, the percentage approach reduces the burden [on] the Court to review and calculate individual attorney hours and rates and expedites getting the appropriate relief to class members.

*Garst v. Franklin Life Ins. Co.*, No. 97-C-0074-S, 1999 U.S. Dist. LEXIS 22666, at *83-84 (N.D. Ala. June 25, 1999) (citations omitted). Each of these rationales also warrants a percentage-based award here.

### B. The 22% Fee Request Is Less Than the Eleventh Circuit's Benchmark Fee Award

The Eleventh Circuit has established 25% of the settlement fund as a "benchmark" (and presumptively reasonable) fee award in common-fund cases. *See Faught*, 668 F.3d at 1243 ("25% is generally recognized as a reasonable fee award in common fund cases"); *Camden I*, 946 F.2d at 774-75 ("[t]he majority of common fund fee awards fall between 20% to 30% of the fund," and district courts consider the middle of that range—25%—as a "benchmark" that "may be adjusted in accordance with the individual circumstances of each case"); *Eslava v. Gulf Tel. Co.*, No. 04-0297-KD-B, 2007 WL 4105977, at *1 (S.D. Ala. Nov. 16, 2007) ("the benchmark for a common fund case is 25%"); *Flournoy v. Honeywell Int'l, Inc.*, No. CV 205-184, 2007 WL 1087279, at *1

(S.D. Ga. Apr. 6, 2007) ("the appropriate standard for fee awards in common fund cases is a percentage of the fund . . . with the benchmark award being twenty-five percent").

A review of common-fund cases confirms that the 22% fee sought by Plaintiffs' Counsel is fair and reasonable, and is actually towards the lower end of the range of fee awards approved by courts within this District and Circuit in complex common-fund cases involving comparably sized settlements. *See, e.g.*, *Waters*, 190 F.3d at 1293-98 (affirming award of 33.3% of $40 million settlement); *City Pension Fund for Firefighters & Police Officers in City of Miami Beach v. Aracruz Celullose S.A., et al.*, Case No. 08-23317-C-LENARD, slip op. at 7 (S.D. Fla. July 17, 2013) (Ex. 6 to Ross Decl.) (awarding 33 1/3% of $37.5 million settlement); *In re BellSouth Corp. Sec. Litig.*, 1:02-cv-2142-WSD, 2007 U.S. Dist. LEXIS 98429, at *10 (N.D. Ga. Apr. 9, 2007) (awarding 30% of $35 million settlement); *Flournoy*, 2007 WL 1087279, at *2-3 (awarding 25% of $25 million settlement); *In re HealthSouth Corp. ERISA Litig.*, No. CV-03-BE-1700-S, 2006 WL 2109484, at *6-7 (N.D. Ala. June 28, 2006) (awarding 25% of $28.9 million settlement); *In re Terazosin Hydrochloride Antitrust Litig.*, C.A. No. 99-C-7410 (JBZ), 2005 WL 2451958, at *2 (S.D. Fla. July 8, 2005) (awarding 30% of $28.7 million settlement); *Fabricant v. Sears Roebuck & Co.*, No. 98-1281-Civ., 2002 WL 34477904, at *4 (S.D. Fla. Sept. 18, 2002) (awarding 28.5% of $48 million settlement).[4]

In sum, when judged against the Eleventh Circuit benchmark, and compared to fees awarded in class-action settlements of similar magnitude in this District and Circuit, the requested 22% fee is fair and reasonable.

### C.   The Percentage Fee Approved by Lead Plaintiffs Is Entitled to a Presumption of Reasonableness

Another factor favoring the reasonableness of Lead Counsel's 22% fee application under the percentage-of-the-fund method is that this fee was approved by Lead Plaintiffs, which are institutional investors charged by the Court and the PSLRA with responsibility for monitoring Lead Counsel. In enacting the PSLRA, Congress intended to encourage sophisticated institutional

---

[4]   Fee awards of greater than 22% have also been awarded in numerous other common-fund cases in this District in cases involving substantially larger settlements. *See, e.g.*, *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1365-66 (S.D. Fla. 2011) (awarding 30% of $410 million settlement); *In re Terazosin Hydrochloride Antitrust Litig.*, No. 99 MDL 1317, 2005 U.S. Dist. LEXIS 43082, at *19-22 (S.D. Fla. Apr. 19, 2005) (awarding 33.3% of $75 million settlement); *In re Sunbeam Sec. Litig.*, 176 F. Supp. 2d 1323, 1336 (S.D. Fla. 2001) (awarding 25% of $110 million settlement).

investors with substantial financial stakes in securities class actions to serve as lead plaintiffs and actively supervise and direct the litigation, including selecting and monitoring class counsel. *See In re Cendant Corp. Litig.*, 264 F.3d 201, 261-62, 282 (3d Cir. 2001). Accordingly, fees negotiated between properly selected PSLRA Lead Plaintiffs and their counsel should be accorded a presumption of reasonableness. *See id.* at 282-83; *City of St. Clair Shores Gen. Emps.' Ret. Sys. v. Lender Processing Servs., Inc.*, No. 3:10–cv–01073–TJC–JBT, 2014 WL 12621611, at *2 (M.D. Fla. Mar. 4, 2014) (approving fee request that was "reviewed and approved as fair and reasonable by Lead Plaintiff, a sophisticated institutional investor that was directly involved in the prosecution and resolution of the claims and who has a substantial interest in ensuring that any fees paid to Lead Plaintiff's Counsel are duly earned and not excessive"); *In re Carter's, Inc. Sec. Litig.*, Civ. A. No. 1:08-CV-2940-AT, 2012 WL 12877943, at *2 (N.D. Ga. May 31, 2012) (same); *In re Mills Corp. Sec. Litig.*, 265 F.R.D. 246, 261 (E.D. Va. 2009) ("in a PSLRA case . . . a fee request that has been approved and endorsed by properly-appointed lead plaintiffs . . . enjoys a presumption of reasonableness"). This presumption helps "ensure that the lead plaintiff, not the court, functions as the class's primary agent vis-a-vis its lawyers." *Cendant*, 264 F.3d at 282.

Here, Lead Plaintiffs are sophisticated institutional investors with experience in negotiating fees with counsel and in evaluating the results of securities-fraud class-action settlements. The Painters Funds negotiated the 22% fee request and approve and endorse the requested fee as fair and reasonable in light of the worked performed by Plaintiffs' Counsel in the Action, the substantial risks of the litigation, and the substantial recovery obtained for the Settlement Class. *See* McDevitt Decl., at ¶ 7. Accordingly, the requested fee is entitled to a presumption of reasonableness.[5]

### D.     Additional Factors Confirm That the Requested Fee is Fair and Reasonable

In *Camden I*, the Eleventh Circuit recognized that there "is no hard and fast rule mandating a certain percentage of a common fund which may reasonably be awarded as a fee because the amount of any fee must be determined upon the facts of each case." 946 F.2d at 774. The *Camden I* court recommended that district courts consider several additional factors to determine whether a requested percentage award is reasonable, including:

---

[5]     The fee request also has the full support of Plaintiff West Palm Beach Firefighters. *See* Merrell Decl., at ¶ 6.

(1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to the acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and the length of the professional relationship with the client; [and] (12) awards in similar cases.

*Id.* at 772 n.3 (citing *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974)). *Camden I* also recognized that in awarding a percentage fee award a court may also properly consider "the time required to reach a settlement, whether there are any substantial objections by class members or other parties to the settlement terms or the fees requested by counsel . . . and the economics involved in prosecuting a class action." *Id.* at 775.

Although the Eleventh Circuit has since stated that a full analysis of the *Johnson* and other additional factors is only necessary if the fee request exceeds 25%, *see Faught*, 668 F.3d at 1242; *Sewell v. D'Alessandro & Woodyard, Inc.*, No. 2:07-cv-343-FtM-29SPC, 2011 WL 6047085, at *2 (M.D. Fla. Dec. 6, 2011), Lead Counsel nonetheless urge the Court to consider these factors, as they would provide strong support for an *upward* adjustment to the benchmark 25% fee in this case—and thus necessarily provide even stronger support for an award that is *less than* the 25% benchmark.

### 1.    The Time and Labor Required

A review of the efforts and time expended by Plaintiffs' Counsel confirms that the requested fee is fully justified. The Ross Declaration details the many tasks that Plaintiffs' Counsel undertook to prosecute the claims in the Action, the time and labor they expended in that effort, and the skill and creativity brought to bear in that effort. As discussed in greater detail in the Ross Declaration, Plaintiffs' Counsel, among other things:

- conducted a comprehensive factual investigation of the claims at issue in the Action, which included, among other things, reviewing all relevant public information, researching the applicable law, and identifying, locating, and interviewing numerous former Altisource and Ocwen employees (Ross Decl. ¶¶ 19-22);

- prepared and filed the detailed and particularized Amended Complaint based on Lead Counsel's factual investigation (*id.* ¶¶ 23-28, 34-36, 96-98), as well as the subsequent Second, Third, and Fourth Amended Complaints;

- vigorously defended two rounds of motions to dismiss filed by Defendants (*id.* ¶¶ 29-32, 37-43);

8

- prepared and served document requests on the Altisource Defendants, Ocwen, the other related companies, and other third parties (*id*. ¶¶ 44-50);

- researched, drafted, and filed several motions to compel the production of party and third-party documents and responded to two motions for protective orders and a motion to compel filed by Defendants, a process which also involved several meet and confers between the parties and four hearings before the Court on discovery matters and related motion practice (*id*. ¶¶ 58-79);

- reviewed and analyzed over one million pages of documents produced in discovery (*id*. ¶¶ 52-57);

- prepared and served interrogatories on the Altisource Defendants (*id*. ¶ 80);

- coordinated the Painters Funds' and West Palm Beach Firefighters' responses to the Altisource Defendants' wide-ranging document requests and interrogatories (*id*. ¶¶ 81-87);

- prepared and filed a comprehensive brief in support of Plaintiffs' motion for class certification, which included an expert report submitted by Plaintiffs' financial expert regarding market efficiency (*id*. ¶¶ 88-93);

- in connection with class certification, prepared for and defended five depositions, including a witness from the Painters Funds, a witness from West Palm Beach Firefighters, the Painters Funds' investment manager, West Palm Beach Firefighters' investment manager, and Lead Plaintiffs' market-efficiency expert (*id*. ¶¶ 89, 95);

- prepared and served the Altisource Defendants with two detailed expert reports concerning market efficiency, another detailed expert report concerning damages and loss causation, and a comprehensive expert report concerning Defendants' conflicts-of-interest misrepresentations (*id*. ¶¶ 88, 91, 99-101); and

- participated in extensive settlement negotiations mediated by former Judge Phillips, which included numerous settlement discussions, written submissions to Judge Phillips, and the exchange of information regarding the parties' positions on damages and liability (*id*. ¶¶ 102-107).

The number of hours Plaintiffs' Counsel expended on this litigation (over 14,400 hours with a resulting lodestar of $7,443,434.25) attests to their extensive efforts. Ross Decl. ¶ 154. The time and labor expended by counsel here amply support the requested fee.

While not required in the Eleventh Circuit, an analysis of the requested fee under the "lodestar/multiplier" approach further supports the reasonableness of a 22% award. *See, e.g.*, *Waters*, 190 F.3d at 1298 ("while we have decided in this circuit that a lodestar calculation is not proper in common fund cases, we may refer to that figure for comparison"). Here, based on the $32 million Settlement Fund, the requested 22% fee award of approximately $7,040,000 represents a fractional or "negative" multiplier of approximately 0.95 on Plaintiffs' Counsel's total lodestar

(i.e., less than the time incurred by Plaintiffs' Counsel in the prosecution of this litigation). Given that multipliers between 2 and 5 are commonly awarded in complex class actions with substantial contingency risks, the negative multiplier of approximately 0.95 requested here strongly confirms the reasonableness of the requested fee. *See, e.g.*, *Pinto v. Princess Cruise Lines, Ltd.*, 513 F. Supp. 2d 1334, 1344 (S.D. Fla. 2007) (finding that lodestar multipliers tend to range from 2.26 to 4.5 and that, while "three appears to be the average," many cases have awarded higher multipliers) (citations omitted); *Ingram v. Coca-Cola Co.*, 200 F.R.D. 685, 694-96 (N.D. Ga. 2001) (awarding fee representing a multiplier between 2.5 and 4); *Mashburn v. Nat'l Healthcare, Inc.*, 684 F. Supp. 679, 702 (M.D. Ala. 1988) (finding that a multiplier of 3.1 is "not unusual or unreasonable").[6] Indeed, courts have recognized that where a request for attorneys' fees is below the amount of class counsel's lodestar that fact provides strong support for the reasonableness of the requested fee. *See, e.g.*, *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 146 (S.D.N.Y. 2010) (that counsel only sought 87.6% of their lodestar "strongly suggests that the requested fee is reasonable"); *In re Initial Pub. Offering Sec. Litig.*, 671 F. Supp. 2d 467, 515 (S.D.N.Y. 2009) (noting that there was "no real danger of overcompensation" given that the requested fee represented a 4% discount to counsel's lodestar).

### 2.      The Novelty and Difficulty of the Issues

As courts have recognized, "multi-faceted and complex" issues are "endemic" to cases based on alleged violations of federal securities law (*Sunbeam*, 176 F. Supp. 2d at 1334), and "securities actions have become more difficult from a plaintiff's perspective in the wake of the PSLRA." *In re Sterling Fin. Corp. Sec. Class Action*, No. 07-2171, 2009 WL 2914363, at *4 (E.D. Pa. Sept. 10, 2009) (citation omitted). This Action was no exception.

Lead Plaintiffs and Lead Counsel faced several novel and difficult issues in this Action, including vigorously contested motions to dismiss involving complicated facts and difficult legal issues that challenged all of the elements of their Section 10(b) claims. As detailed in the Ross Declaration, the Altisource Defendants vigorously contested their liability under Section 10(b) on

---

[6]      As stated in Plaintiffs' Counsel's respective firm declarations attached as Exhibits 4A-4C to the Ross Declaration, the hourly rates for attorneys and other professionals that were used to calculate the lodestar are the same as the regular rates that these attorneys and other professionals charge for services in non-contingent matters or that have been accepted by courts in other federal class-action litigation. Exs. 4A-4C to the Ross Decl.

falsity, materiality, and scienter grounds, among others. For example, one of Lead Plaintiffs' principal allegations in the Action was that, contrary to Defendants' repeated public statements, Defendant Erbey regularly participated in conflicted, related-party transactions with Altisource's former parent, Ocwen. However, the Altisource Defendants argued that their alleged misstatements regarding Erbey's involvement in related-party transactions were not false or misleading because Erbey, in his role as Altisource Chairman, did not vote to approve related-party transactions between Altisource and Ocwen or any of the other related companies and, as a result, Defendants' representations concerning his recusal were accurate. Thus, despite Lead Plaintiffs' strenuous arguments that Erbey's participation in discussions and negotiations of Ocwen-related transactions contradicted Defendants' representations, a finder of fact could conclude that, absent an actual vote on a particular transaction, Defendants' statements concerning Erbey's recusal were not misleading. Furthermore, even if the statements were found to be misleading, the Altisource Defendants had strong arguments that scienter was lacking because Erbey and Altisource reasonably believed that Erbey recused himself from related-party transactions by simply abstaining from the formal approval process.

At the time the Settlement was reached, Lead Plaintiffs also faced a significant risk that the Class Period would be shortened. In both their opposition to the class-certification motion and their motion to dismiss the Fourth Amended Complaint, the Altisource Defendants argued that the first allegedly false statement was made on December 3, 2013, seven months after April 25, 2013, the date that Lead Plaintiffs allege started the Class Period. If Defendants prevailed on this issue, the Class Period would be shortened to December 3, 2013 through December 21, 2014, inclusive, and thousands of Class Members who purchased shares from April 25 through December 2, 2013 would be excluded from recovering any of their losses.

The calculation and proof of the damages suffered by the Settlement Class also presented complicated and difficult issues in the Action. In order to prove damages in this securities case, Lead Plaintiffs bear the burden of establishing "loss causation," i.e., that Altisource's statements caused their alleged losses. *See Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 345-46 (2005) (plaintiffs bear the burden of proving "that the defendant's misrepresentations 'caused the loss for which the plaintiff seeks to recover'" (quoting 15 U.S.C. § 78u-4(b)(4)). To establish loss causation, Lead Plaintiffs must demonstrate a sufficient connection between the fraudulent conduct and the losses suffered. *See Meyer v. Greene*, 710 F.3d 1189, 1196-97 (11th Cir. 2013).

In this case, Defendants had strong loss-causation defenses that presented a significant risk to Lead Plaintiffs' ability to satisfy their burden of showing that the losses suffered by the Settlement Class were attributable to any of the alleged partial corrective disclosures on February 26, 2014, August 4, 2014, November 11, 2014, and December 22, 2014. In particular, Defendants argued that Lead Plaintiffs were unable to disaggregate any losses caused by the alleged corrective disclosures from stock drops caused by the simultaneous disclosure of other, non-fraud-related bad news or by similar misrepresentations made by Ocwen, which was dismissed as a Defendant in this Action.

Moreover, the Altisource Defendants had substantial arguments that the decline in Altisource's stock price during the Class Period was not caused by Defendants' alleged misstatements, but instead was caused entirely by—or cannot be separated from—concerns over Altisource's businesses prospects in light of the contemporaneous intense regulatory scrutiny on Ocwen, Altisource's largest client.

Finally, these risks were compounded by the fact that several claims in this Action had already been dismissed by the Court, and the Court had expressed some skepticism concerning the remaining claims. In addition, the Court had established an aggressive discovery and trial schedule, with expert submissions due in January, summary-judgment motions due in April, and a trial set for the beginning of July. Indeed, the Altisource Defendants' motion to dismiss the Fourth Amended Complaint, Plaintiffs' class-certification motion, and the exchange of expert reports, followed closely by motions for summary judgment, increased the possibility that the Court could further narrow or eliminate claims within the coming months.

Thus, Lead Counsel faced multiple difficult and significant obstacles in prosecuting this Action. However, despite these obstacles, Lead Counsel was able to achieve an excellent result for the Settlement Class in this matter. Success in the face of these obstacles strongly supports the requested fee award.

### 3.    The Skill Required to Perform the Legal Services Properly, and the Experience, Reputation, and Ability of the Attorneys

Under these factors, the court should consider "the skill and acumen required to successfully investigate, file, litigate, and settle a complicated class action lawsuit such as this one," *David v. Am. Suzuki Motor Corp.*, No. 08-CV-22278, 2010 WL 1628362, at *8 n.15 (S.D. Fla. Apr. 15, 2010), and "the experience, reputation and ability of the attorneys" involved. *Camden I*, 946 F.2d at 772 n.3.

Considerable litigation skills were required and called upon here. As noted above, this is a highly complex case involving difficult factual and legal issues and a significant amount of factual and expert discovery. Given the complexity of the Action and the presence of numerous contested issues, it took highly skilled counsel to represent the Settlement Class and bring about the excellent recovery that has been obtained.

As demonstrated by Lead Counsel's firm résumé (attached as Exhibit 3 to its firm declaration submitted with the Ross Declaration), Bernstein Litowitz is one of the nation's leading securities class-action litigation firms. Without question, Lead Counsel's skills and experience were a major factor in obtaining the excellent result achieved in this Settlement.

This Court should also consider the "quality of the opposition the plaintiffs' attorneys faced" in awarding Plaintiffs' Counsel a fee. *Sunbeam*, 176 F. Supp. 2d at 1334; *see also Ressler*, 149 F.R.D. at 654. Here, the Altisource Defendants were represented by King & Spalding LLP, a nationally prominent defense firm that vigorously contested the Action through multiple motions to dismiss and discovery and continuing through the parties' agreement to settle the Action. The Altisource Defendants were also represented during the latter stage of the litigation by Jones Day, another top defense firm. And the Ocwen Defendants were represented by Kramer Levin Naftalis & Frankel LLP, yet another top defense firm. Ross Decl. ¶ 157. Lead Counsel's ability to obtain a favorable Settlement for the Settlement Class despite this formidable legal opposition confirms the quality of the representation that Lead Counsel provided here. Accordingly, this factor also supports the fee requested.

### 4.    The Preclusion of Other Employment

The considerable amount of time spent prosecuting this case—over 14,400 hours (Ross Decl. ¶ 154)—was time that Plaintiffs' Counsel could not devote to other matters. Moreover, Plaintiffs' Counsel expended this time and effort without any assurance that they would be successful or that they would ever be compensated for their hard work. Accordingly, this factor also supports the requested fee.

### 5.    The Customary and Contingent Nature of the Fee

The "customary fee" in a class-action lawsuit of this nature is a contingency fee because virtually no Class member possesses a sufficiently large stake in the litigation to justify paying attorneys on an hourly basis. *See Norman v. Hous. Auth. of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988); *Ressler*, 149 F.R.D. at 654.

13

The contingent nature of Plaintiffs' Counsel's fees should be given substantial weight in assessing the requested fee. Courts have consistently recognized that the risk that class counsel could receive little or no recovery is a major factor in determining the award of attorneys' fees:

> A determination of a fair fee for Class Counsel must include consideration of the contingent nature of the fee . . . and the fact that the risks of failure and nonpayment in a class action are extremely high. Cases recognize that attorneys' risk is "'perhaps the foremost' factor" in determining an appropriate fee award.

*Pinto*, 513 F. Supp. 2d at 1339; *see also In re Friedman's Inc. Sec. Litig.*, No. 1:03-cv-3475-WSD, 2009 WL 1456698, at *3 (N.D. Ga. May 22, 2009) ("The contingent nature of fees in this case should be given substantial weight in assessing the requested fee award."); *Ressler*, 149 F.R.D. at 654-55 ("The substantial risks of this litigation abundantly justify the fee requested herein . . . ."). "Lawyers who are to be compensated only in the event of victory expect and are entitled to be paid more when successful than those who are assured of compensation regardless of result." *Jones v. Diamond*, 636 F.2d 1364, 1382 (5th Cir. 1981). This is so because of the risk that after investing thousands of hours, plaintiffs' counsel may receive no compensation whatsoever. *See Ressler*, 149 F.R.D. at 656-57.

As the court in *Behrens* noted:

> In a securities fraud action, a contingency fee arrangement has added significance. The federal securities laws are remedial in nature and, in order to effectuate their statutory purpose of protecting investors and consumers, private lawsuits should be encouraged. If the ultimate effectiveness of these remedies is to be preserved, the efficacy of class actions and of contingency fee arrangements—often the only means of legal representation available given the incredible expense associated with these actions—must be promoted.

*Behrens v. Wometco Enters., Inc.*, 118 F.R.D 534, 548 (S.D. Fla. 1988) (citations omitted).

Success in contingent litigation like this is never assured. In other cases, plaintiffs' counsel in shareholder litigation have suffered major defeats after years of litigation in which they expended millions of dollars of time only to receive no compensation at all. Even a victory at trial is not a guarantee of success. *See*, *e.g.*, *Robbins v. Koger Props., Inc.*, 116 F.3d 1441 (11th Cir. 1997), *reh'g en banc denied*, 129 F.3d 617 (11th Cir. 1997) (finding no loss causation and overturning $81 million jury verdict); *In re BankAtlantic Bancorp, Inc. Sec. Litig.*, No. 07-61542-CIV, 2011 WL 1585605, at *1 (S.D. Fla. Apr. 25, 2011) (overturning jury verdict in favor of plaintiff class and granting judgment as a matter of law in favor of defendants). As noted above, Lead Plaintiffs' claims in this Action faced multiple hurdles that could have prevented or

14

substantially limited any recovery. Indeed, the Court dismissed many of Lead Plaintiffs' claims and expressed some skepticism about the remaining claims, highlighting the risks faced by Lead Plaintiffs in litigating those claims through summary judgment and trial. Because the fee in this matter was entirely contingent, the only certainties were that there would be no fee without a successful result, and that a successful result would be realized, if at all, only after considerable and difficult effort. Thus, the substantial risks of the Action also justify the requested fee.

### 6.    The Amount Involved and Results Achieved

"It is well-settled that one of the primary determinants of the quality of the work performed is the result obtained." *Ressler*, 149 F.R.D. at 655; *see also Friedman's*, 2009 WL 1456698, at *3 (same). As noted above, the excellent result here was accomplished despite the substantial difficulties of proving liability for securities fraud and the risks of establishing loss causation and damages in this case. It was only the extensive efforts of Lead Counsel in, among other things, preparing multiple detailed complaints following a comprehensive investigation, vigorously opposing Defendants' motions to dismiss, and developing the case through significant fact and expert discovery, that allowed Lead Plaintiffs to achieve the $32 million Settlement—a recovery that represents more than 10% of the Settlement Class's estimated likely recoverable damages of approximately $300 million. *See* Ross Decl. ¶¶ 121-124. This recovery is also a significant achievement because, as Altisource has publicly disclosed, it is being funded by a substantial $28 million contribution from the Company. As discussed in the Ross Declaration, Altisource had limited insurance, so Plaintiffs' success in obtaining such a large contribution from Altisource further highlights the results achieved.

### 7.    The Undesirability of the Case

In certain instances, the "undesirability" of a case can be a factor in justifying the award of a requested fee. There are risks inherent in financing and prosecuting complex litigation of this type. When Lead Counsel undertook representation of Lead Plaintiffs in this action, it was with the knowledge that Lead Counsel would have to spend substantial time and money and face significant risks without any assurance of being compensated for their efforts. Only the most experienced plaintiffs' litigation firms would risk the time and expense involved in light of the uncertainty of ever obtaining a meaningful recovery—or any recovery at all. Apart from the risk of no recovery, deferring fees in an undertaking like this while at the same time advancing

hundreds of thousands of dollars in expenses would deter most firms. Thus, the "undesirability" of the case also weighs in favor of the requested fee.

### 8.     Awards in Similar Cases

As discussed above in § II.B, Lead Counsel's requested 22% fee is below the 25% benchmark fee in class-action cases that is presumptively fair and reasonable in this Circuit. *See Faught*, 668 F.3d at 1242; *Camden I*, 946 F.2d at 774-75. Moreover, as also shown above, in comparable class-action settlements, judges in this District and Circuit have frequently awarded substantially higher percentage fees, including fees in the 30% to 33⅓% range. *See* § II.B, *supra*. Thus, this factor strongly supports the reasonableness of the requested 22% fee.

### 9.     The Time Required to Reach Settlement

A substantial amount of time was required to resolve the Action. This was not a case, for example, where the parties were able to reach an early settlement—to the contrary, before the parties began serious settlement discussions, Lead Counsel had to vigorously oppose multiple motions to dismiss, conduct significant fact and expert discovery (including the collection and review of over one million pages of documents and the submission of two detailed expert reports), commence deposition discovery, and file their class-certification motion papers. And even after an agreement in principle to settle was reached, significant amounts of additional time were required to negotiate the final terms of the settlement papers and draft the Plan of Allocation.

Given the vigorously contested nature of this litigation, during the pendency of this Action, Plaintiffs' Counsel dedicated over 14,400 hours to the case. Ross Decl. ¶ 154. The significant amount of time expended on this case further supports the requested fee award, particularly where the requested 22% fee is less than the lodestar value of the time counsel expended.

### 10.     The Reaction of the Settlement Class

Further confirming the reasonableness of the requested fee, to date no member of the Settlement Class has objected to it. Through April 24, 2017, more than 17,800 copies of the Notice have been mailed to potential Class Members and their nominees, and the Summary Notice was published in the *Wall Street Journal* and transmitted over the PR Newswire. *See* Fraga Decl., at ¶¶ 2-10. The Notice expressly advised Class Members that Lead Counsel would apply for fees in the amount of 22% of the Settlement Fund, and that the deadline for filing objections to the fee

application is May 9, 2017. As of the date of this Memorandum, not a single objection to the requested fee award has been filed. Ross Decl. ¶ 164.[7]

*    *    *    *    *

As demonstrated above, under Eleventh Circuit law, Plaintiffs' Counsel should receive a reasonable percentage of the recovery received by the Settlement Class. An examination of other fee awards demonstrates that the fee requested by Lead Counsel is well within the range of fees awarded in this District and the Eleventh Circuit. Lead Counsel's fee application also should be presumed to be reasonable as it has the approval and endorsement of the Court-appointed Lead Plaintiffs. Finally, the fee requested is reasonable in light of all the factors the Eleventh Circuit has recommended for consideration in evaluating a fee, including the time and effort expended by counsel, the difficulty of the issues presented, the result obtained, and the contingent risk of the litigation. The requested fee of 22% of the Settlement Fund is reasonable under all these circumstances and should be awarded in full.

**E.      Lead Counsel's Request for Reimbursement of Litigation Expenses Should Also Be Awarded in Full**

Lead Counsel also requests reimbursement of $988,206.72 in Litigation Expenses incurred by Plaintiffs' Counsel in prosecuting the Action. Litigation expenses should be reimbursed if they are "reasonable and necessary to obtain the settlement." *Ressler*, 149 F.R.D. at 657; *see also* 1 Alba Conte, *Attorney Fee Awards* § 2.19, at 73-74 (3d ed. 2006) ("an attorney who creates or preserves a common fund by judgment or settlement for the benefit of a class is entitled to receive reimbursement of reasonable fees and expenses involved").

The expenses for which Lead Counsel seek reimbursement are the types of expenses that are necessarily incurred in litigation and routinely charged to clients billed by the hour. These expenses include, among others, costs for consulting and testifying experts, a document database, on-line research, court reporting and transcripts, telephone, photocopying, postage, and out-of-town travel. The largest expense is compensation for Lead Plaintiffs' experts, which included experts in the areas of market efficiency, loss causation and damages, related-party transactions, and accounting issues, and total $730,182.29, or approximately 74% of the total Litigation Expenses incurred by Plaintiffs' Counsel. The second largest expense is for the combined costs of

---

[7]      Should any objections be filed, they will be addressed in Lead Counsel's reply papers to be filed on or before May 23, 2017.

17

on-line legal and factual research in the amount of $144,392.61, or approximately 15% of the total amount of expenses. Lead Counsel also paid $22,400.00 for Lead Plaintiffs' portion of the mediation fees charged by former Judge Phillips. A complete breakdown by category of the expenses incurred by Plaintiffs' Counsel is included in Exhibit 5 to the Ross Declaration. These expense items are billed separately by Plaintiffs' Counsel, and these charges are not duplicated in the firms' hourly billing rates.

The Notice informed potential Settlement Class Members that Lead Counsel would apply for reimbursement of Litigation Expenses in an amount not to exceed $1,200,000, which may—in accordance with the PSLRA—include the reasonable costs and expenses of Plaintiffs directly related to their representation of the Settlement Class. *See* Fraga Decl. Ex. A at ¶¶ 5, 71. The total amount of expenses requested by Lead Counsel is $1,006,185.03, which includes $988,206.72 in reimbursement of Litigation Expenses incurred by Plaintiffs' Counsel and $17,978.31 in reimbursement of costs and expenses collectively incurred by the Painters Funds and West Palm Beach Firefighters, an amount well below the amount listed in the Notice. To date, there has been no objection to the request for expenses.

F.     **Plaintiffs Should Be Reimbursed for Their Respective Costs Directly Related to the Representation of the Settlement Class**

In connection with their request for reimbursement of Litigation Expenses, Lead Counsel also seek reimbursement of the costs and expenses incurred directly by (i) the Court-appointed Lead Plaintiffs, the Painters Funds, and (ii) named Plaintiff West Palm Beach Firefighters. The PSLRA specifically provides that an "award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class" may be made to "any representative party serving on behalf of a class." 15 U.S.C. § 78u-4(a)(4).

Here, the Painters Funds and West Palm Beach Firefighters seek awards of $15,265.81 and $2,712.50, respectively, for time dedicated by their employees to furthering and supervising the Action. *See* McDevitt Decl., at ¶¶ 9-11; Merrell Decl., at ¶¶ 8-10. Employees of the Painters Funds took an active role throughout the entire history of the litigation, including, among other things, reviewing significant pleadings and briefs filed in the Action; communicating regularly with Bernstein Litowitz regarding developments in the Action; searching for and gathering the Painters Funds' internal documents for production in response to Defendants' document requests; preparing for and sitting for a deposition in connection with Lead Plaintiffs' class-certification motion; monitoring the progress of settlement negotiations; and evaluating and approving the Settlement.

*See* McDevitt Decl., at ¶¶ 4-5. Similarly, West Palm Beach Firefighters, which sought to be a Class Representative, has also been actively involved in the prosecution of the Action through, among other things, regular communications with its counsel, Saxena White; review of significant pleadings and briefs filed in the Action; producing documents in discovery; preparing for and sitting for a deposition in connection with class certification; and evaluating and approving the Settlement. *See* Merrell Decl., at ¶ 4. For both the Painters Funds and West Palm Beach Firefighters, the requested reimbursement amounts are based on the number of hours that their respective employees committed to these activities, multiplied by reasonable hourly rates for their time, which are determined according to their annual compensation. *See* McDevitt Decl., at ¶ 11 n.2; Merrell Decl., at ¶ 10 n.2.

Numerous courts have approved reasonable awards to compensate lead plaintiffs for the time and effort they spent on behalf of a class. In *In re Marsh & McLennan Companies Securities Litigation*, No. 04-8144(CM), 2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009), the court awarded $144,657 to the New Jersey Attorney General's Office and $70,000 to certain Ohio pension funds, to compensate them "for their reasonable costs and expenses incurred in managing this litigation and representing the Class." *Id.* at *21. As the court noted, their efforts were "precisely the types of activities that support awarding reimbursement of expenses to class representatives." *Id.*; *see also Miller v. Dyadic Int'l, et al.*, Case No. No. 07-80948-CIV-DIMITROULEAS, slip op. at 5 (S.D. Fla. July 28, 2010) (Ex. 7 to Ross Decl.) (awarding Lead Plaintiff $32,000 for "reimbursement of its time and expenses in assisting in the prosecution of this action"); *City Pension Fund for Firefighters & Police Officers in City of Miami Beach v. Aracruz Celullose S.A., et al.*, Case No. 08-23317-C-LENARD, slip op. at 8 (S.D. Fla. July 17, 2013) (Ex. 6 to Ross Decl.) (awarding Lead Plaintiff $40,000 for "its reasonable costs and expenses incurred in representing the Class during the prosecution of this Action"); *Mazur v. Lampert, et al.*, Case No. 04-61159-CIV-LENARD/GARBER, slip op. at 5 (S.D. Fla. June 19, 2008) (Ex. 8 to Ross Decl.) (awarding Lead Plaintiff $40,000); *In re HealthSouth Corp. Bondholder Litig.*, Case No. CV-03-BE-1500-S, slip op. at 5 (N.D. Ala. July 26, 2010) (Ex. 9 to Ross Decl.) (awarding a total of $40,768 to two Lead Plaintiffs); *Carpenters Health & Welfare Fund v. Coca-Cola Co.*, 587 F. Supp. 2d 1266, 1275 (N.D. Ga. 2008) (awarding $7,558 in expenses to Lead Plaintiffs); *see also Mills Corp.*, 265 F.R.D. at 265 (reimbursing class representatives for their costs incurred "in connection with, among other things, traveling to depositions, the review of documents provided by class counsel,

and attendance at mediation sessions"); *In re Xcel Energy, Inc. Sec. Derivative & ERISA Litig.*, 364 F. Supp. 2d 980, 1000 (D. Minn. 2005) (awarding $100,000 to plaintiffs because they "have been actively involved throughout the litigation" by "communicat[ing] with counsel throughout the litigation [and] review[ing] counsels' submissions"); *In re Veeco Instruments Inc. Sec. Litig.*, No. 05 MDL 01695 (CM), 2007 WL 4115808, at *12 (S.D.N.Y.  Nov. 7, 2007) (awarding institutional lead plaintiff $15,900 for time spent supervising litigation, and characterizing such awards as "routine"); *In re Gilat Satellite Networks, Ltd.*, No. CV-02-1510 (CPS)(SMG), 2007 WL 2743675, at *19 (E.D.N.Y. Sept. 18, 2007) (granting PSLRA awards where "the tasks undertaken by employees of Lead Plaintiffs reduced the amount of time those employees would have spent on other work and these tasks and rates appear reasonable to the furtherance of the litigation").

The awards sought by Plaintiffs are reasonable and justified under the PSLRA based on their involvement in the Action from inception to settlement, and should be granted.

## III.     CONCLUSION

For the reasons discussed above and in the Ross Declaration, Lead Counsel respectfully request that the Court award attorneys' fees in the amount of 22% of the Settlement Fund, or $7,040,000 plus interest earned at the same rate as earned by the Settlement Fund; award $988,206.72 in reimbursement of the reasonable Litigation Expenses that Plaintiffs' Counsel incurred in prosecuting the Action; and award $17,978.31 in reimbursement of the total costs and expenses incurred by the Painters Funds and West Palm Beach Firefighters directly relating to the representation of the Class.

Dated: April 25, 2017                               /s/ *Hannah G. Ross*

Hannah G. Ross (admitted pro hac vice)
Lauren A. Ormsbee (admitted pro hac vice)
**BERNSTEIN LITOWITZ BERGER &**
  **GROSSMANN LLP**
1251 Avenue of the Americas
New York, NY 10020
Telephone:  (212) 554-1400
Facsimile:  (212) 554-1444
hannah@blbglaw.com
lauren@blbglaw.com

*Lead Counsel for Lead Plaintiffs the Pension*

*Fund for the Painters and Allied Trades
District Council 35 and the Annuity Fund for
the Painters and Allied Trades District Council
35 and the Settlement Class*

Maya S. Saxena (FL Bar No. 0095494)
Joseph E. White, III (FL Bar No. 621064)
**SAXENA WHITE P.A.**
5200 Town Center Circle, Suite 601
Boca Raton, FL 33486
Telephone:  (561) 394-3399
Facsimile:  (561) 394-3382
msaxena@saxenawhite.com
jwhite@saxenawhite.com

*Liaison Counsel for Lead Plaintiffs the
Pension Fund for the Painters and Allied
Trades District Council 35 and the Annuity
Fund for the Painters and Allied Trades
District Council 35 and the Settlement Class*

## <u>LOCAL RULE 7.1(a)(3) CERTIFICATION</u>

Lead Counsel certify under Local Rule 7.1(a)(3) that they have conferred with counsel for the Altisource Defendants, which take no position with respect to this Motion.

Dated: April 25, 2017                    /s/ *Hannah G. Ross*

Hannah G. Ross (admitted pro hac vice)
Jai K. Chandrasekhar (admitted pro hac vice)
Lauren A. Ormsbee (admitted pro hac vice)
**BERNSTEIN LITOWITZ BERGER &
   GROSSMANN LLP**
1251 Avenue of the Americas
New York, NY 10020
Telephone:  (212) 554-1400
Facsimile:  (212) 554-1444
hannah@blbglaw.com
jai@blbglaw.com
lauren@blbglaw.com

*Lead Counsel for Lead Plaintiffs the Pension
Fund for the Painters and Allied Trades
District Council 35 and the Annuity Fund for
the Painters and Allied Trades District Council
35 and the Settlement Class*

Maya S. Saxena (FL Bar No. 0095494)
Joseph E. White, III (FL Bar No. 621064)
**SAXENA WHITE P.A.**
5200 Town Center Circle, Suite 601
Boca Raton, FL 33486
Telephone:  (561) 394-3399
Facsimile:  (561) 394-3382
msaxena@saxenawhite.com
jwhite@saxenawhite.com

*Liaison Counsel for Lead Plaintiffs the
Pension Fund for the Painters and Allied
Trades District Council 35 and the Annuity
Fund for the Painters and Allied Trades
District Council 35 and the Settlement Class*

<u>**CERTIFICATE OF SERVICE**</u>

I certify that on April 25, 2017, I electronically filed Lead Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses and Incorporated Memorandum of Law, using the CM/ECF system.

I certify that the foregoing is true and correct.

Executed on April 25, 2017.

*/s/ Lester Hooker*
Lester Hooker
